UNITED STATES of America, Appellee,

v.

Oscar ANDIARENA,
Defendant, Appellant.

No. 85–1838.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1986.

Decided July 13, 1987.

Before COFFIN, Circuit Judge, BROWN,* Senior Circuit Judge, and BREYER, Circuit Judge.

BROWN, Senior Circuit Judge.

Oscar Andiarena challenges his conviction of conspiracy to possess with intent to distribute cocaine. His primary contention on appeal is that the trial court erred in admitting substantial amounts of evidence concerning prior criminal or bad acts under Fed.R.Evid. 404(b). Andiarena also claims ineffective assistance of counsel and that the court reporter's failure to transcribe tape recordings played before the jury interferes with his right to a complete record for appeal. We find no merit in any of Andiarena's claims and therefore affirm the District Court.

### The Cocaine Connection

Andiarena supplied cocaine from Florida to Neil Kurtzmann, Louis Llerena, Joe Lopez, and Gus Lopez, a group who distributed cocaine in Maine, beginning in 1983. The cocaine was carried from Florida to Maine body-packed[1] on a woman referred to as "Feffa" or "the grandmother." Upon her arrival, she would be met at the airport, exchange the cocaine for money, and then take the money back to Florida. In the spring of 1984, the parties stopped dealing with each other due to a financial dispute. They evidently resolved their dispute, because in October 1984, they decided to deal with each other again and re-established the network from Florida. The source of cocaine for the reestablished network was again to be Andiarena or one other person, depending on price and quality. Feffa was again used to body-pack the cocaine from Florida to Maine in the same manner she did in 1983.

Neil Kurtzmann, one of the distributors in Maine, was arrested on November 7, 1984 and agreed to cooperate with the federal agents. Kurtzmann provided the information which led to the arrest of Louis Llerena, another of the distributors. Llere-

Melvyn Kessler, Miami, Fla., for defendant, appellant.

David R. Collins, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Joseph H. Groff, III, Asst. U.S. Atty., Portland, Me., were on brief, for appellee.

* Of the Fifth Circuit, sitting by designation.

1. The cocaine was placed around the courier's body in plastic bags. The courier used by And-

iarena was described as an obese elderly woman on whom the packages of cocaine were unnoticeable.

na, in turn, identified Andiarena as the source of cocaine for their revived cocaine distribution network. They agreed to assist the DEA by tape recording conversations with other members of the group. The testimony of Kurtzmann, Llerena, and the Lopez brothers, along with the tape recordings, was introduced as evidence at Andiarena's trial. Andiarena was found guilty of conspiracy to distribute cocaine with intent to distribute it to others in violation of 21 U.S.C. § 846 for his participation in the cocaine conspiracy during October and November 1984.

Andiarena presents three contentions in contesting his conviction. Andiarena's main contention is that the District Court abused its discretion in permitting evidence of prior bad acts to be presented to the jury because the prejudicial effect of these prior bad acts outweighed their probative value. He also urges that the court reporter's failure to transcribe the portions of the tapes that were played before the jury creates an incomplete record of what evidence was before the jury and inhibits his ability to formulate an appeal. Finally, Andiarena contends that he received ineffective assistance of counsel primarily due to counsel permitting evidence of prior bad acts to be presented without objection.

### Transcribing the Tapes

Nine tapes were played before the jury at Andiarena's trial. The court reporter did not transcribe these tapes into the record while they were being played to the jury. Although the government had prepared transcripts of the taped conversations which the witness and counsel followed while the tapes were played, the transcripts were not formally introduced into evidence or made part of the record at trial. Thus, at the time Andiarena filed his

appeal, there was no written record of the taped conversations played to the jury, although the tapes themselves were introduced and made part of the record as exhibits.

■ The Court Reporter Act, 28 U.S.C. § 753(b), requires that a reporter "shall record verbatim by shorthand or by mechanical means ... all proceedings in criminal cases held in open court." The language of the Act is clear, and although its requirements are mandatory,[2] the consequences of a technical violation are in no sense equally mandatory.

■ The reporter's failure to comply with the Court Reporter Act constitutes harmless error in this case. The record on appeal is not flawed due to the absence of transcriptions of the tapes. In a similar case where tape recordings played to a jury were formally introduced, but were not transcribed by the court reporter, the Seventh Circuit held that they had "the most accurate record of what was heard by the jury, and the fact that the court reporter did not transcribe the contents of the tape recordings in no way impedes our review of the proceedings below." *United States v. Craig*, 573 F.2d 455, 480 (7th Cir.1977) *cert. denied*, 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978). We echo the Seventh Circuit's holding. As the actual tapes are a part of the record in the District Court, both the defendant and the appellate court have the ability to listen to those tapes to review for errors and defects.[3]

■ Additionally, upon receipt of Andiarena's brief, the government undertook to have the District Court supplement the record on appeal with transcripts of the nine tapes in question pursuant to Fed.R. App.P. 10(e).[4] The District Court correctly

---

**2.** *See, e.g., United States v. Selva*, 559 F.2d 1303, 1305 (5th Cir.1977).

**3.** There is no requirement that a party introduce both the tape that is played before the jury and the transcripts of that tape into evidence. However, it is certainly helpful to both the appellant and the appellate court to have the luxury of reviewing a written record of the evidence. Thus, while it is not required that a party duplicate the record with both a tape and a transcript, we would hesitate to disparage or deter the careful trial attorney who seeks to create as practical a record for review as possible.

**4.** Rule 10(e) provides:

If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or *the district court, either before or after the record is transmitted to the court of appeals,*

granted the government's motion to supplement the record over Andiarena's spurious objections that the District Court lacked jurisdiction to supplement the record.

■ The District Court properly supplemented the record by forwarding to this court the 25–page transcript of the nine tape recordings played before the jury. The record, which now contains both the tape recordings and the transcripts, is in no way incomplete nor does it impede Andiarena's ability to review the record to formulate his appeal.[5]

*Evidence of Prior Bad Acts*

■ The District Court allowed the government to introduce evidence of Andiarena's involvement with a cocaine network comprising the same individuals in 1983—prior to the beginning of the conspiracy for which he was on trial. Before the government started to question its first witness about the earlier networking scheme with Andiarena, the government requested a side bar conference to discuss the Fed.R.Evid. 404(b) implications of the testimony.[6] The Judge stated his concern about the prejudicial effect such evidence might have and asked the prosecutor what probative, non-prejudicial purpose the evidence was offered to support. Following argument by both counsel, the Judge permitted evidence of the earlier networking operation to be presented to the jury to prove the identity of Andiarena as the source of the cocaine and gave a limiting

instruction to the jury under Fed.R.Evid. 105 *sua sponte.* Likewise, at several junctures in the trial when a witness testified about Andiarena's involvement in the prior networking scheme or the similar method of operation of that prior scheme, the Judge gave limiting instructions to remind the jury of the limited purpose for which the evidence could be considered.

The taped conversations which were played to the jury referred to the earlier networking scheme and the individuals involved in that scheme. The testimony about the agreement to reinitiate the networking operation with the same actors required a contextual knowledge of the prior networking operation. The evidence concerning the manner in which the cocaine was carried from Florida to Maine by the grandmother Feffa was similarly probative.

Evidence of prior bad acts may be admitted "for purposes other than to prove bad character ... if it has some special probative value." *United States v. Morris,* 700 F.2d 427, 431 (1st Cir.), *cert. denied,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983), citing *United States v. Moccia,* 681 F.2d 61, 63 (1st Cir.1982). As we held in both *Morris* and *Moccia,* the trial Judge must balance this special probative value against the possible prejudice under Fed.R. Evid. 403. Balancing these concerns lies within the broad discretion of the trial Judge and will only be reversed upon a showing that the Judge abused his discre-

on proper suggestion or of its own initiative, may direct that the omission or a misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

Fed.R.App.P. 10(e) (emphasis added).

5. At oral argument, Andiarena's counsel contended that he was unable to review the evidence that was before the jury because it is unknown what portions of the tapes—and transcripts—were actually played to the jury. The combined transcript of the nine tapes in question encompasses only 25 pages; a review of these 25 pages for error is not an onerous burden on Andiarena's counsel. Andiarena has failed to identify any portion of the transcripts which would constitute error if it was played before the jury. Absent a showing of plain

error if a portion of the transcript was played to the jury, the inability to identify which portions were, or were not, played to the jury would be at most harmless error. Thus, we find no compelling reason to require a hearing to determine what portions of the transcripts were played when counsel is unable to identify anything but harmless error.

6. Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

tion. *See United States v. Maldonado-Medina,* 761 F.2d 12, 15 (1st Cir.1985); *Morris,* 700 F.2d at 431; *United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975).

The proper analysis for determining the admissibility of evidence of prior bad acts under Fed.R.Evid. 404(b) was announced by this Circuit in *United States v. Maldonado-Medina,* 761 F.2d 12, 15 (1st Cir.1985). "The first step is to determine whether the evidence has some 'special' probative value.... The second step to admit evidence under Fed.R.Evid. 404(b) involves a balancing process: the district judge must balance the probative value of the evidence against possible prejudice." *United States v. Kadouh,* 768 F.2d 20, 21 (1st Cir.1985), citing *Maldonado-Medina,* 761 F.2d at 15. *See also United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

The record reflects that the District Court received argument on both factors required under *Maldonado-Medina.* The Judge initially ruled to sustain Andiarena's objection, but changed his ruling after further argument showing the witness' identification of Andiarena as the source of the cocaine came from being introduced to him during the prior networking operation. This demonstrates the Judge carefully balanced the probative value of the proffered testimony against its potential unfair prejudice to Andiarena.

In light of the District Court's repeated issuance of limiting instructions and side-bar conferences inquiring as to the probative value versus the prejudicial effect of the evidence, we cannot say that the District Court abused its discretion in permitting evidence of prior bad acts to be presented before the jury.

### Effective Assistance of Counsel

Andiarena contends his court-appointed trial counsel was incompetent and ineffective. Andiarena bases this claim primarily on the fact that substantial Rule 404(b) testimony was admitted without objection.

Andiarena summarized his claim by stating: "The type of errors range from basic hearsay objections, to completely irrelevant testimony, to failing to object to substantial 404(b) testimony." Brief for Appellant at 18.

The Supreme Court announced a two-part test for effective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 690–91, 104 S.Ct. 2052–66, 80 L.Ed.2d 674, 695–96 (1984):

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional conduct. [i] The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

> .    .   .    .    .

> [ii] An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.

■ Andiarena has met neither of the two requirements of *Strickland.* Andiarena fails to identify specific acts or omissions of unreasonable conduct and instead relies on general averments such as "[t]he record is replete with areas where irrelevant and inadmissible testimony was introduced because of counsel's incompetency." Brief for Appellant at 18. Those specific acts and omissions which Andiarena does identify do not demonstrate unreasonable conduct or that the outcome would have been different had objections been made.

■ Andiarena's assertion that trial counsel failed to vigorously object to similar bad act evidence is flatly contradicted by the record. Counsel filed a Motion in Limine to exclude "similar act" evidence of the prior conspiracy under Rule 404(b). Counsel's Motion in Limine was denied following argument prior to the start of trial. Counsel objected to evidence concerning the networking scheme prior to the October through November conspiracy charged un-

der Fed.R.Evid. 404(b) and was overruled on several occasions. The Court sustained counsel's objections under Rule 404(b) to one of the tape recordings due to its references to Andiarena being on parole and required the government to read portions of the transcript agreed upon by Andiarena's attorney.

Although some bad act evidence was introduced without objection, and some following trial counsel's standing objection to further testimony, Andiarena has failed to demonstrate that a diligent attorney would have performed differently or a probability that a different result would have been reached had objections been made to the proffer of all the evidence of prior bad acts. In light of the Judge's previous rulings, failure to object to every prior bad act does not demonstrate ineffective assistance of counsel. Trial strategy including when and how to object does not subject counsel's performance in its totality to a sixth amendment violation.

Andiarena also contends that counsel was ineffective because of her failure "to discuss the case with Appellant until the morning before the trial ... [and her failure] to learn of three important defense witnesses until the day of trial." Brief for Appellant at 17. This assertion by Andiarena is also flatly contradicted by the record. The morning of trial, Andiarena moved for substitution of counsel based on "a lack of communication—[he did] not understand many of the terms [counsel] use[d]." Andiarena also stated in this motion that he had told his attorney "for three months to have [his] daughters as witnesses." This contradicts his contention on appeal that his attorney did not speak with him until the day of trial. Based on this contradiction as well as trial counsel's pretrial motions for discovery, a *Petrozziello* hearing,[7] and Motion in Limine, we find no merit in Andiarena's allegation that counsel was neither diligent or competent in her preparations for trial.

Andiarena's final basis for his ineffective assistance of counsel claim was her failure to call Andiarena's daughters as witnesses. Trial counsel subpoenaed his daughters as witnesses and was ready to call them as the first witnesses on the third day of trial. However, as the record reflects, a series of phone conversations took place with the girls' mother the night before they were to testify. Following these conversations, Andiarena's daughters returned to Florida. Andiarena asked his trial counsel if his daughters could be held in contempt of court for not testifying pursuant to subpoenas. She advised him that since they were his witnesses they would not be charged for contempt unless he so moved. The government stated that it would not object to material witness warrants, but Andiarena stated through counsel that he would rather go without their testimony. Based on this colloquy, neither Court nor counsel can be faulted for the failure of Andiarena's daughters to appear as witnesses.

AFFIRMED.

---

7. Andiarena sought a pretrial conference to determine whether co-conspirators hearsay statements against him were admissible pursuant to

*United States v. Petrozziello*, 548 F.2d 20 (1st Cir.1977).