UNITED STATES, Appellee,

v.

Carlos FERRER–CRUZ,
Defendant, Appellant.

No. 89–1057.

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1989.

Decided March 30, 1990.

Rehearing and Rehearing En Banc Denied
May 18, 1990.

**136**

Jose R. Aguayo, Hato Rey, P.R., with whom Joaquin Monserrate Matienzo was on brief, for defendant, appellant.

Jorge E. Vega–Pacheco, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before BREYER, TORRUELLA and SELYA, Circuit Judges.

BREYER, Circuit Judge.

Carlos Ferrer–Cruz appeals his conviction for aiding and abetting the possession of cocaine with intent to distribute it. 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2. He challenges the admission into evidence of a prior drug conviction, the admission of a statement he made just after his arrest, and the adequacy of the evidence. After reviewing the record in light of his arguments, we affirm his conviction.

1. *Sufficiency of the evidence.* The government claimed that Ferrer knowingly delivered two kilograms of cocaine to two other defendants, who, in turn, sold it to a government agent. The two kilograms of cocaine were on the floor of a blue Honda car. Ferrer drove the car to a meeting with the other two defendants, switched the car for their pickup truck, and drove off in the truck, while they drove the car on to meet the buyer. The government's evidence consisted primarily of testimony from government agents that they observed the following events on June 13, 1988:

 a. At about 10 a.m. Gonzalez (a government agent) and Arteaga (a co-defendant) agreed that their cocaine sale would take place at 1 p.m. in Puerto Nuevo, that they would meet at the Borinquen Towers Shopping Center between 11:30 and noon, and that Gonzalez would telephone Arteaga about 11:30 to confirm arrangements. At 11:15 Gonzalez phoned and confirmed.

 b. Arteaga drove to the shopping center. At about 11:45 a.m. he made a phone call. A few minutes later co-defendant Juan Oquendo (with his son and another man) arrived in a blue pick-up truck. Just after 12 noon Arteaga made another call.

Oquendo then left with his son. He drove to a nearby apartment house, briefly went inside, returned, and drove to appellant Ferrer's liquor store. He spoke briefly to Ferrer. Ferrer drove off in a blue Honda, stopped briefly at the same apartment house, picked up his wife, and drove off again (in the Honda).

c. In the meantime Oquendo returned to the shopping center, where he found Gonzalez and another government agent (the ostensible buyers) talking to Arteaga. Oquendo then tried to switch the sale site from the shopping center to his own home. The effort led several of these men to travel back and forth from the center to Oquendo's home. Eventually, however, they decided to maintain the shopping center as the transfer point. Oquendo said he did not have cocaine with him, but it was on its way from Mirimar. He said he would bring it to the shopping center when it arrived. The two government agents waited at the shopping center. Oquendo and Arteaga returned to Oquendo's home.

d. Oquendo walked back and forth from his house to the street corner several times. At 2 p.m. Ferrer arrived at the corner, driving his blue Honda. At the same time Oquendo came out of his house with a small pan and a spoon. They spoke. Oquendo and Arteaga then drove off in *Ferrer's blue Honda.* Ferrer drove off in the pickup.

e. When Oquendo and Arteaga arrived at the shopping center in the Honda, one of the government agents noticed two dark pink bags on the front seat floor on the passenger side. They arrested Oquendo and Arteaga. They found the bags filled with cocaine.

f. Government agents went to Ferrer's liquor store, saw the pickup parked outside, and arrested Ferrer. They found an address book containing Ferrer's telephone number in the pickup.

Appellant claims that this evidence shows only that he was present at a place (the blue Honda) where cocaine was also present; it does not show that he knew that there was cocaine in the car or that he shared the criminal intent of the codefendants. In our view, however, this intricate series of events, the timing, the visits, the phone calls, would permit a reasonable trier of fact to conclude beyond a reasonable doubt that Ferrer was part of a cocaine scheme. *See United States v. Rivera–Santiago,* 872 F.2d 1073, 1078–79 (1st Cir.) (appellate court "must review the evidence in the light most favorable to the government, including any legitimate inferences which can be drawn from it to determine whether a rational jury could have found [the] defendant guilty beyond a reasonable doubt"), *cert. denied sub nom. Castro–Poupart v. United States,* — U.S. —, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989) *and cert. denied sub nom. Romero–Lopez v. United States,* — U.S. —, 110 S.Ct. 105, 107 L.Ed.2d 68 (1989); *United States v. Paone,* 758 F.2d 774, 775 (1st Cir.1985) (same); *United States v. Mehtala,* 578 F.2d 6, 10 (1st Cir.1978) (same). Thus, it is sufficient to permit a jury to convict him.

■ *2. Evidence of a prior conviction.* The trial court permitted the government to introduce into evidence in its case-in-chief the fact that Ferrer had previously pled guilty to two unrelated charges of illegally possessing cocaine and marijuana (in 1985). As we have often pointed out, a trial court can admit such evidence of past bad acts only if the evidence survives *two* related tests. First, it must overcome the absolute bar of Fed.R.Evid. 404(b), which excludes evidence of a past bad act where it is relevant *only* because it shows bad character (i.e., the proposed logical inference includes character as a *necessary* link). *See, e.g., United States v. Rubio–Estrada,* 857 F.2d 845, 846–47 (1st Cir.1988); *United States v. Rivera–Medina,* 845 F.2d 12, 15–16 (1st Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 160, 102 L.Ed.2d 131 (1988); *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 579–80 (1st Cir.), *cert. denied sub nom. Latorre v. United States,* 484 U.S.

989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Andiarena*, 823 F.2d 673, 678 (1st Cir.1987). Second, it must also survive scrutiny under Fed.R.Evid. 403, which excludes even evidence that is relevant through allowable chains of inference where the probative value of that evidence is "substantially outweighed" by the risks of prejudice, confusion, or waste of time. *See Rubio–Estrada*, 857 F.2d at 847; *Rivera–Medina*, 845 F.2d at 15–16; *Gonzalez–Sanchez*, 825 F.2d at 580; *Andiarena*, 823 F.2d at 678. Ferrer argues that the district court, in admitting the evidence, wrongly found these tests satisfied.

■ Leaving aside a special feature of this case, to which we shall turn in a moment, we should not find Ferrer's claim on this appeal very plausible. The government argued to the district court, as it argues to us, that it introduced the evidence in order to show Ferrer's knowledge that the bags contained drugs and to show his intention to help his codefendants consummate the sale. Since one who has previous experience with drugs is more likely to see "car switching" as part of a drug sale technique than one who has no such experience, and since one with such experience is more likely to recognize (and hence to know) that the bags' contents were drugs than one without such experience, the inferences at issue do not involve character. And the fact that a juror might also make other inferences that do involve character is beside the point as far as Rule 404's *absolute ban* is concerned. As we have written before, that Rule's framers considered the pros and cons of absolutely banning evidence of this sort; and they concluded that the evidence survives an absolute ban as long as at least *one* permissible inference is possible. *See, e.g., Rubio–Estrada*, 857 F.2d at 846–47; *Gonzalez–Sanchez*, 825 F.2d at 579–80.

Moreover, the probative value of the evidence in this case (as we said, leaving aside, for a moment, the special feature) is quite high. We have just pointed out that a reasonable juror could find guilt beyond a reasonable doubt on the basis of the evidence we have described; but it is also true

that a reasonable juror might have had a reasonable doubt. Such a juror might have thought that the government failed to prove anything beyond Ferrer's presence in a car with cocaine; and, believing the government failed to prove Ferrer *knew* it was cocaine or that he intended to deliver cocaine to the codefendants, such a juror might have voted to acquit. The evidence of a past conviction might have helped convince such a juror of guilt through its permissible suggestion that Ferrer knew about drugs and drug possession. Given the district court's broad discretionary power to weigh "probative weight" against "prejudicial effects," *see, e.g., United States v. Simon*, 842 F.2d 552, 555 (1st Cir.1988); *United States v. Crocker*, 788 F.2d 802, 804 (1st Cir.1986); *United States v. Zeuli*, 725 F.2d 813, 817 (1st Cir.1984); *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975), and given its proper limiting instructions to the jury, we could not say its decision to admit the evidence was unlawful.

Ferrer argues, however, that his case contains a special feature. He says that the government did not really need this prior conviction evidence because he, in effect, *admitted* knowledge. His defense consisted of evidence showing that *he did not drive the blue Honda.* Rather, he said, his brother drove the Honda, and his was the unfortunate circumstance of mistaken identity. We agree with Ferrer that, were knowledge and intent not issues in his case, the prejudicial effect of the past conviction would inevitably overcome the need for the evidence. But, after examining the record, we cannot agree with the premise of his argument. We do not believe he removed the issues of "knowledge" and "intent" from the case.

■ First, the simple fact that Ferrer did not argue lack of knowledge or intent, the fact that he presented a defense of "mistaken identity," would not, by itself, remove those issues from the case. For one thing, at the time the government presented the evidence, at the end of its case-in-chief, it did not know precisely what type

of defense Ferrer would make; indeed, it did not know whether Ferrer would choose to present any case at all. More importantly, a juror, disbelieving the testimony about Ferrer's brother, might still worry about whether or not the government had shown more than "mere presence" in a car with cocaine, a "presence" without the "knowledge" or "intent" needed to make that presence a crime.

Second, we have examined the record in light of the Second Circuit's holding that a defendant can remove "knowledge/intent" issues from a case (and thereby potentially avoid introduction of prior convictions) by telling the court that he will not dispute those issues, *provided that he expresses himself to the court with sufficient clarity* to justify the court in (a) disallowing any "subsequent cross-examination or jury argument that seeks to raise" those issues, and (b) "charging the jury that if they find all other elements beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed." *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir.1980). We can find no such clear offer to stipulate here.

The closest Ferrer might come to finding such an offer to stipulate is in the following exchange, which occurred at the end of the government's case, when the government asked to introduce the prior conviction.

THE COURT: ... I say that the mere fact that the defendant pleads not guilty, by the mere fact the he pled not guilty he creates an issue of fact and then he doesn't have to take the stand or bring any evidence to make that a crucial factual issue. And it is a factual issue in this case. Intent.

Now as I say, I heard before throughout this trial that the defense, that—well, mere presence at the sight [sic]—

MR. MONSERRATE: Not in this case. We are not arguing that.

THE COURT: It's in the record, Counsel. You mentioned at some point and at the proper time when you asked to dismiss the indictment, it's there that mere presence is not a crime and mere presence of the crime doesn't show guilt. We do not see how one could interpret Mr. Monserrate's comments as showing more than they say, namely, that the defense *will not argue* mere presence. That is quite different from saying that the judge may instruct the jury that, should it find such presence, the defense will not dispute the "knowledge" or "intent" needed to support conviction.

Third, the fact of the matter is that the defense *did* argue "mere presence," i.e., the absence of the requisite knowledge and intent. On the second day of trial, before the prosecution introduced the prior conviction, Ferrer's counsel moved to quash his indictment on the ground that the grand jury transcript showed "mere presence." When government counsel asked to introduce the prior conviction, defense counsel told the court, "If you rule against him we'll argue a Rule 29," (i.e., we'll argue that there is insufficient evidence to convict, presumably because the evidence shows only "presence"). After the court admitted the evidence, counsel moved for acquittal on the ground the evidence still showed only "presence." Counsel renewed the same motion at the end of trial. And, of course, counsel argues the point again here.

We are not at all critical for counsel for making the "mere presence" argument; it is a plausible argument. But the very fact of its plausibility explains why we cannot say the issues of "intent/knowledge" were absent from the case. That being so, the law does not forbid the district court to admit prior convictions as relevant to those issues.

3. *The post-arrest statement.* To understand Ferrer's argument here, the reader must recall the government's case. Its witnesses said that, at the critical time, Ferrer drove up to the corner by Oquendo's house in a blue Honda (in which they later saw the cocaine). Ferrer then switched the Honda for Oquendo's pickup. Oquendo and Arteaga drove the Honda (with the drugs) to the shopping center. Ferrer drove off in the pickup. Government

agents later found the pickup outside Ferrer's liquor store, where they arrested Ferrer.

After the government presented its case, Ferrer's counsel called Ferrer's brother as a witness. The brother testified that *he*, not Ferrer, had driven the pickup all day. That testimony invited the jury to conclude that the government witnesses were mistaken in identifying Ferrer as the person who had switched the blue Honda for the pickup.

In rebuttal the government recalled the agents who had arrested Ferrer. They testified that, after they arrested him at the liquor store, *he admitted that he had driven the pickup to the liquor store.* Ferrer now claims that the district court should have excluded evidence of this admission for two separate reasons.

 First, he says that the government had not provided the substance of this "oral admission" to him on discovery, a failure that violates Rule 16's requirement that the government, upon request,

> permit the defendant to inspect and copy ... the substance of any oral statement which the government *intends to offer in evidence* at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent....

Fed.R.Crim.P. 16(a)(1)(A). The problem with this claim is that the district court could reasonably conclude that this particular oral statement fell outside the scope of the words we have underlined; it was not a statement that the government "intend[ed] to offer in evidence." Although these words should be interpreted to include statements that the government believes it will likely introduce in rebuttal as well as in its case-in-chief, *see United States v. Mitchell*, 613 F.2d 779, 781 (10th Cir.), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 604 (1980); *United States v. Heath*, 580 F.2d 1011, 1021 (10th Cir.1978), *cert. denied sub nom. Babb v. United States*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979); *United States v. Lewis*, 511 F.2d 798, 801–03 (2d Cir.1975) (decided before Rule 16 was amended to deal specifically with oral statements); 2 C. Wright, *Federal Practice & Procedure: Criminal 2d* § 253, at 55 (1982), we cannot read them as including statements, located not on paper but only in the minds of arresting officers, that the government, at the outset, does not know about, has no particularly good reason to find out about (or take note of), and would be unlikely to introduce at trial. *Cf. United States v. Gleason*, 616 F.2d 2, 25 (2d Cir.1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980) *and cert. denied sub nom. Carter v. United States*, 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980) ("The Government is not obligated by Rule 16(a) to anticipate every possible defense, assume what the defendant's trial testimony (if he decides to testify) will be, and then furnish him with otherwise irrelevant material that might conflict with his testimony.").

In this case, the government did not know about Ferrer's defense until he presented it. Indeed, the government moved to strike the defense as an "alibi defense" of which it lacked the previous notice that Rule 12.1 of the Federal Rules of Criminal Procedure requires a defendant to give. (The trial court concluded "mistaken identity" did not amount to an "alibi.") Moreover, the prosecutor (whom the court apparently credited) told the court that he had first become aware of the statement's existence when he began to look for rebuttal material only a few hours before he introduced the statement. Consequently, we find the district court could reasonably conclude that the "oral statement" was not evidence that the government intended to introduce prior to trial, and that it therefore fell outside the strictures of the rule. (Of course, under Fed.R. Crim.P. 16(c) the government has a continuing duty to disclose discoverable evidence that has come to light after the defendant's original discovery request; but in this case, the prosecutor told Ferrer about the statement as soon as he had become aware of it, thus satisfying the duty of "prompt notification.")

■ Second, Ferrer claims that government agents obtained this statement in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He concedes, however, that the agents read him his rights in Spanish, his native language, before they questioned him. He also concedes that after they did so, he responded, "it was all right." He says only that the questions followed so quickly upon the conclusion of the warning ("a matter of seconds. Two or three second[s]. A minute, more or less."), that he did not really have time to think, let alone knowingly to relinquish his rights.

The district court, however, considered this argument; it found that:

Number one, the defendant was read his rights; that the defendant, by testimony, was calm; that he was not even handcuffed when the incriminatory statement was made. Furthermore, that he walked, he was told he was going to be arrested and he walked towards the agents indicating—and I'm drawing the inference that he had no fear nor was he in a state of anguish—that shows that he had at least, or he was not feeling that uncomfortable in the presence of the agents. Also his wife was there. He was cooperating bringing the keys. There were other people there. It was a public place. And most important and significant, that the question was asked concerning the confiscation of the vehicle for the purposes of that.

The basic governing legal rule is that a court, in considering whether a defendant has voluntarily relinquished his Fifth Amendment rights, must examine "the totality of circumstances surrounding the interrogation." *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979); *see United States v. Montgomery*, 714 F.2d 201, 203 (1st Cir.1983). The record supports the district court's description of the circumstances. In our view, that court, given that "totality," could find

a voluntary waiver despite the brief elapsed time before questioning began.

For these reasons the judgment is

*Affirmed.*

TORRUELLA, Circuit Judge (dissenting).

For some time, I have expressed concern over the almost unbroken line of cases in this Circuit which have permitted the use of evidence of prior bad acts to improperly influence convictions. *See United States v. Simon*, 842 F.2d 552, 555 (1st Cir.1988) (Torruella, J., concurring), and the cases cited therein. In view of the indiscriminate broadening of this pervasive trend, I believe that there is an ever-present cause for alarm.

Federal Rule of Evidence 404(b) [1] clearly limits the use of prior bad act evidence to carefully circumscribed situations. Unfortunately, we have made it increasingly facile for the exceptions to become the rule. As I previously pointed out,

The prohibition against the introduction of "[e]vidence of other crimes ... to prove the character of a person in order to show action in conformity therewith," mandated by Fed.R.Evid. 404(b) as well as due process, *Lovely v. United States*, 169 F.2d 386, 389 (4th Cir.1948), ... has become the exception rather than the rule, a classical case of the tail wagging the dog. Almost any excuse or farfetched theory is made to fit within that Rule's truly exceptional language, i.e., that such evidence is admissible only as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See* Fed.R.Evid. 404(b).

*United States v. Simon*, 842 F.2d at 556 (Torruella, J., concurring). The majority's decision in the present case illustrates this unfortunate point.

It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

1. Fed.R.Evid. 404(b) provides:
 **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

Over defendant's objection, evidence was introduced that he previously pled guilty to two charges of possessing cocaine and marijuana in 1985. That evidence should have been excluded from this trial and it was an error not to do so. Although Fed.R.Evid. 404(b) permits the use of evidence of other crimes, not to prove the character of a person, but as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Fed.R.Evid. 404(b), these exceptions are tempered by Fed.R.Evid. 403. *See United States v. Rubio–Estrada*, 857 F.2d 845, 847 (1st Cir.1988). Rule 403 permits admission of such evidence unless its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403. *See also Rubio–Estrada*, 857 F.2d at 847. There is no question that the evidence of the prior convictions did all these three things.

The asserted basis for admission of Ferrer's two prior convictions for possession of controlled substances was to permit the jury to infer that the appellant was knowledgeable about drug trafficking and that he committed the crime of possession of narcotics with intent to distribute in a manner inconsistent with mistake or accident. The district court held that the evidence was admissible, even after deeming it "quite prejudicial," because it concluded that the appellant raised the issues of intent and knowledge *by pleading not guilty*. This is a remarkable conclusion. I fail to see how this type of evidence will ever be excluded merely because a defendant pleads not guilty—which is to say, every time a criminal trial takes place. If that is all that is needed to trigger the admission of such evidence, it will for all intents and purposes always be admissible.

The majority's suggestion that without the prior act evidence a reasonable juror might have had reasonable doubt about Ferrer's guilt, and that the prior act evidence would help to overcome that doubt, illustrates exactly the reason why the evidence should have been excluded: it is unfairly prejudicial because it relieves the government of its burden of proving be-

yond a reasonable doubt, the essential elements of the *current* crime. The inference that the Rule 403 balance of "probative weight" against "prejudicial effects" weighs on the side of admissibility solely because it may help the government's case is preposterous. Most of the evidence that is routinely excluded from admission, including extorted confessions, is undoubtedly "helpful" to a weak government case. Such reasoning flies in the face of the very wording of the Rule, and renders it virtually meaningless. It is bootstrap logic, which should not be the basis for a conviction.

As far as I can discern, whether Appellant committed the charged crime accidently or mistakenly was never an issue in the case and is not raised merely by pleading not guilty. Ferrer never argued lack of knowledge or intent. The fact that he testified what amounts to "mere presence" *before the grand jury* is totally immaterial. The Fifth Amendment prevents a trial court from requiring a criminal defendant to disclose his defense until *trial*, unless the situation comes within one of the recognized exceptions to this fundamental rule of procedural due process. *E.g.*, Fed.R. Crim.P. 12.1(a) (notice of intent to offer a defense of alibi required); Fed.R.Crim.P. 12.2 (notice of intent to offer insanity defense or expert testimony of defendant's mental condition).

As I see it, the reason that the government introduced the evidence at all was to permit the *petit* jury to infer that, since appellant possessed controlled substances three years previously, such prior possession was circumstantial *evidence* to establish possession of a controlled substance with intent to distribute in the *instant* case. This is directly contrary to the direction of Fed.R.Evid. 404(b). Since I do not believe that it was clear that the issues of mistake or accident would be in dispute, if the issues of mistake or accident were to be raised, it was for the *defense* to raise them by presenting evidence *at the trial*. The government could then have offered the prior act evidence in rebuttal. *Cf. United States v. Simon*, 842 F.2d at 555.

But, it was error to admit them in the government's case in chief.

For these reasons, I respectfully dissent.