March 18, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 90-1465

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE ELIECER AGUDELO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Selya, Circuit Judge,

Aldrich, Senior Circuit Judge,

and Cyr, Circuit Judge.

Charles W. Rankin, with whom Rankin & Sultan was on brief for

appellant.
Brian T. O'Connor, Assistant United States Attorney, with whom A.

John Pappalardo, United States Attorney, was on brief for appellee.

March 18, 1993

ALDRICH, Senior Circuit Judge. Defendant Jorge

Eliecer Agudelo appeals from his November 29, 1989 conviction

for possession with intent to distribute five kilograms or

more of cocaine, 21 U.S.C. 841(a)(1), and for conspiracy to

do the same. 21 U.S.C. 846. Three co-defendants, Hildardo

Alvarez, Antonio Palacio Calle, and Jorge Ivan Berrio-Londono

were also so charged. The jury convicted Alvarez, but the

district court directed mistrials for Calle and Berrio-

Londono after the jury failed to reach a verdict.1 On

appeal, Agudelo alleges that the court erred in allowing

Special Agent Lemon to testify regarding a 1986 seizure of

cash from the defendant and in allowing him to provide expert

opinion testimony on the same. We affirm.

The story, taking it most favorably to the

government, United States v. Echeverri, 982 F.2d 675 (1st

Cir. 1993), unfolds as follows. Drug Enforcement

Administration ("DEA") agents learned that a Lear jet had

been hired to fly empty from Detroit to Boston to pick up

several passengers. The itinerary called for a limousine to

pick up the passengers at room 160 of a local Holiday Inn,

the driver to ask for Steve. Upon arrival at Logan Airport

the pilot presented the $4,000 rental fee to the agents, and

their trained dog alerted to a narcotics residue. The DEA

1. Calle has since pleaded and Berrio-Londono has been tried
and convicted. United States v. Berrio-Londono, 946 F.2d 158

(1st Cir. 1991), cert. denied, 112 S.Ct. 1223 (1992).

-2-

agents replaced the limousine driver with police Sgt.

Tomassi, who proceeded to room 160 and knocked. Agudelo

opened the door, and the three co-defendants were inside.

Walking down the corridor to leave, Agudelo told Alvarez to

"go get the bag," and Alvarez left by a side exit while the

others proceeded to the limousine outside the main entrance.

On their reaching it Agudelo and the other two co-defendants

were confronted by the agents, and Alvarez was thereafter met

carrying a partially unzipped duffel bag. Inside were 12

kilograms of cocaine in wrapped packages. Investigation

showed that the hotel room had been checked into by Calle and

Berrio-Londono at 8 p.m. that evening. A search found it

empty but for a scrap of paper with Alvarez's phone number.

After his arrest, Agudelo told the police that

Calle and Berrio-Londono were soccer friends whom he had not

seen for years until a happenstance encounter earlier that

afternoon. He added that he had agreed to meet them at the

hotel just to "say hello and bye-bye." This explanation was

contradicted by boarding passes found on Calle and Berrio-

Londono for the 6 p.m. Trump shuttle from New York to Boston.

These were verified by a Trump Shuttle recordkeeper who also

provided their validated flight coupons.

At trial, DEA Special Agent Lemon testified, over

objection, regarding his seizing $50,000 cash from Agudelo in

1986. Lemon testified that as Agudelo was passing through

-3-

the airport security clearance area, Lemon stopped and

questioned him. Agudelo responded that he carried $500 in

cash, but, after a search, Lemon found $50,000 in small

denomination bills in his clothing and gym bag. Agudelo then

claimed that he had received the money from a Rafael Sanchez

at a restaurant, though he could not provide the name or

location of the restaurant or Sanchez's phone number. A dog

trained in drug detection "alerted" to the presence of

unidentified drug traces on the money. It was seized and

ultimately forfeited when Agudelo, even though he had been

given a receipt, failed to apply for its return. Again over

objection, Agent Lemon testified that he believed the cash

was "proceeds from a drug transaction." Counsel for Agudelo

declined the district court's offer to provide a limiting

instruction.

To be admissible, evidence of a prior conviction or

other wrongdoing under Fed. R. Evid. 404(b)2 must survive a

two part test. First, the past incident must have some

relevance other than to show the defendant's character or

propensity to commit the crime. United States v. Ferrer-

Cruz, 899 F.2d 135, 137 (1st Cir. 1990). Second, even if

2. "Evidence of other crimes, wrongs, or acts is not
admissible to prove the character of a person in order to
show action in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity,
or absence or mistake or accident. . . ."

-4-

specially relevant, the danger of prejudice cannot

substantially outweigh the probative value of the evidence.

Id. at 138; Fed. R. Evid. 403.

The special relevance question has arisen numerous

times in relation to a defendant's claim that he was unaware

of drugs stored in a variety of mundane or, hopefully, secret

places, including defendants' car trunk,3 car floor,4

checked or carry-on baggage,5 or under his chicken coop and

frozen dog food.6 For a recent collection of cases see

United States v. Arias-Montoya, 967 F.2d 708 (1st Cir. 1992).

It is true that the circumstances in 1986 and the present are

widely different, but, if the jury believed defendant had

been in a drug transaction then, this might cast substantial

doubt on his testimony that his exercising control over the

commandeered bag was innocent. United States v. Nickens, 955

F.2d 112, 124 (1st Cir.), cert. denied, 113 S.Ct. 108 (1992).

This was not a case of drugs hidden where a defendant might

readily claim ignorance. Shedding this light outweighs any

resulting unfair prejudice. Correspondingly, if the jury did

3. E.g., United States v. Arias-Montoya, post.

4. E.g., United States v. Ferrer-Cruz, ante.

5. E.g., United States v. Nickens, post; United States v.

Simon, 842 F.2d 552 (1st Cir. 1988).

6. United States v. Moccia, 681 F.2d 61 (1st Cir. 1982).

-5-

not give an unfavorable interpretation to the 1986 evidence

it would not have been prejudicial.

We reject the government's claim that the 1986

evidence was admissible simply on the issue of impeachment,

to contradict defendant's 1989 denial that he had ever been

found to have $50,000 on his person. Fed. R. Evid. 608(b).

However, on the broader issue, we think the jury could have

found that the 1986 incident cast light on defendant's intent

in 1989.

This sharpens up, however, defendant's objection to

the admission of the agent's opinion that the 1986 $50,000

"was proceeds from a drug transaction." While expert opinion

is, of course, admissible on such an issue, normally the

expert should have some special qualifications or knowledge

that would cause his opinion to add something of value. Fed.

R. Evid. 702. Here we see nothing; there was, for example,

nothing in the trade that he interpreted or illuminated. See

United States v. Echeverri, ante, and cases cited. The

admission was error.

Although with some hesitation,7 we have concluded

that it was not prejudicial. We agree with defendant that a

jury, if it finds an expert credible, may believe he had

7. This is not to forget our complaint in United States v.

Williams, No. 92-1858 (1st Cir. 2/12/93), about giving the

government two bites at the apple: push for evidence
believed to be damning, and then say it was meaningless.

-6-

special grounds for his opinion. Here there was no

suggestion that he had such. The witness had stated the full

basis for his conclusion, which the jury knew, equally: the

dog's alert, and the singularly powerful fact that defendant

was willing to forego asking for the $50,000's return. Under

the circumstances we regard the agent's opinion as merely

cumulative, and adding nothing substantial.

Finding no prejudicial error, we affirm.

-7-