USCA1 Opinion

 

 February 27, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1337 UNITED STATES, Appellee, v. VIVIENE LEE HOPKINS, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. P rez-Gim nez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ Lydia Lizarribar-Masini, by Appointment of the Court, for _______________________ appellant. Jos A. Quiles-Espinosa, Senior Litigation Counsel, with ________________________ whom Guillermo Gil, United States Attorney, and Rosa Emilia ______________ ____________ Rodr guez-V lez, Executive Assistant United States Attorney, were _______________ on brief for appellee. ____________________ ____________________ CORRECTED ____________________ Per Curiam. Appellant Viviene Lee Hopkins ("Hopkins") Per Curiam. __________ challenges her conviction after a jury trial for importation and possession with intent to distribute cocaine, in violation of 21 U.S.C. 841(a)(1), 952(a), and 955. Hopkins' appeal rests on two grounds. First, she claims that her conviction is not supported by sufficient evidence, see Fed. R. Crim. P. 29. ___ Second, she claims that the government's use during cross- examination of information not provided to defense counsel before trial constituted prosecutorial misconduct, and deprived her of her right to a fair trial. For the following reasons, we affirm. BACKGROUND BACKGROUND We summarize the evidence in the light most favorable to the government. United States v. Abreu, 952 F.2d 1458, 1460 _____________ _____ (1st Cir.), cert. denied, __ U.S. __, 112 S. Ct. 1695, 118 _____ ______ L.Ed.2d 406 (1992). Hopkins arrived at the Luis Mu oz-Mar n International Airport in San Juan, Puerto Rico on the morning of January 4, 1993 on a flight from St. Maarten, Netherlands Antilles. When Hopkins deplaned, United State Customs Service Inspector Stephanie O'Gorman asked Hopkins for her Customs Declaration Form. The form noted Hopkins' purchase of a stereo. Hopkins also had the sales receipt for the stereo, which was admitted as evidence at trial. Hopkins was carrying a large stereo box, a small bag, and a handbag. When questioned, Hopkins claimed that she had not yet opened the stereo box. In Inspector O'Gorman's experience, stereos and other electronic appliances are often used to hide and transport -2- narcotics. O'Gorman became suspicious because Hopkins had so little luggage, had only spent three days in St. Maarten, and did not have a suntan. Acting on this experience and suspicion, O'Gorman conducted an X-ray examination of the stereo box. The X-ray examination revealed "some shadow areas" shaped like packages in the stereo, so O'Gorman decided to search the stereo box and its contents. When lifting the stereo out of the box, O'Gorman noticed that it was unusually heavy, and that the view inside the stereo's back panel was blocked by black electrical tape. Using some keys, O'Gorman touched the area and felt what she believed to be a package moving. She then decided to remove the stereo's back panel. During this search, O'Gorman noticed that Hopkins seemed to become increasingly nervous. As she was pulling off the stereo's back panel, O'Gorman noticed that the attaching screws were scratched, as if someone had already tried to remove them. As she pulled the back panel apart, O'Gorman could see a package inside the stereo. When the panel was removed, O'Gorman found five rectangular packages wrapped in electrical tape. The packages, it turned out, contained approximately 5.7 kilograms of cocaine. Subsequently, Hopkins was arrested and indicted on three counts of importation and possession with intent to distribute. She pled not guilty at her arraignment. During a two-day jury trial, defense counsel moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29 at the close of the prosecution's case. The defense did not, however, renew its -3- motion before the close of trial after presenting its own evidence. The jury found Hopkins guilty on all counts. ANALYSIS ANALYSIS A. Sufficiency of the Evidence A. Sufficiency of the Evidence ___________________________ Hopkins appeals her conviction on the ground that the evidence was insufficient to convict her of the charges. Generally, our standard of review for sufficiency of the evidence appeals requires us to review the record to determine whether the evidence and reasonable inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational jury to determine beyond a reasonable doubt that the defendant was guilty as charged. United States v. Mena-Robles, 4 _____________ ___________ F.3d 1026, 1031 (1st Cir. 1993). It is settled law, however, that when a defendant moves for judgment of acquittal at the end of the prosecution's case, but then fails to renew the motion after presenting her own case, she waives the original motion. United States v. Castro-Lara, 970 F.2d 976, 980 (1st Cir. 1992). ______________ ___________ Because the motion is deemed waived, then, the defendant forfeits the benefit of the customary standard of review, "thereby negating any claim of evidentiary insufficiency unless affirming the conviction would work a 'clear and gross injustice'." Id. at __ 980 n.2 (quoting United States v. Cheung, 836 F.2d 729, 730 n.1 ______________ ______ (1st Cir. 1988) (per curiam)). Keeping this standard in mind, our reading of the record does not reveal any such injustice. On the contrary, it appears that, even if we were to apply the customary standard of -4- review, Hopkins' conviction is amply supported by admissible evidence, particularly the testimony of Inspector O'Gorman. Moreover, although Hopkins argues that the government offered only circumstantial evidence of her knowledge of the illegal contents of her stereo, this argument is unavailing. We resolve all credibility issues in favor of the verdict. United ______ States v. Cassiere, 4 F.3d 1006, 1011 (1st Cir. 1993). The ______ ________ evidence may be entirely circumstantial and need not exclude every reasonable hypothesis of innocence; the factfinder may decide among reasonable interpretations of the evidence. Id. __ (quoting United States v. Batista-Polanco, 927 F.2d 14, 17 (1st _____________ _______________ Cir. 1991). Here, the jury was entitled to reasonably infer Hopkins' knowledge of the stereo's contents, and to reject her testimony on her own behalf at trial to the effect that she lacked the requisite knowledge. Because we find no indicia of "clear or gross injustice" surrounding her conviction, and find that her conviction is supported by sufficient evidence, we reject Hopkins' sufficiency of the evidence challenge. B. Prosecutorial Misconduct B. Prosecutorial Misconduct ________________________ Hopkins' second claim on appeal involves events surrounding the prosecution's cross-examination of Hopkins on the second day of trial. Upon taking the stand in her own defense, Hopkins testified about buying the stereo, but averred that she did not remember the salesperson who sold her the stereo in St. Maarten. During its cross-examination of Hopkins, presumably in -5- an impeachment attempt, the government confronted Hopkins with a document containing information that the salesperson who sold the stereo had been identified, and remembered selling it not to Hopkins but to a man.1 This cross-examination continued without objection from defense counsel. The government did not offer the impeachment document into evidence. At the conclusion of this cross- examination, the government provided defense counsel with a copy of the impeachment document, and defense counsel then requested a bench conference. During the conference, defense counsel explained to the court that, in conducting its own investigation, the defense had interviewed the salesperson and had come away with a different story than that contained in the impeachment document. At counsel's request, the court granted the defense time, until after the lunch recess, to either locate another witness to testify or to decide whether counsel would take the stand and testify about the salesperson's prior inconsistent statements. After the lunch recess, however, defense counsel had apparently abandoned the matter, and called no witnesses regarding the salesperson's statements or the impeachment document's information. Hopkins now claims on appeal that the government's use of the impeachment document constituted prosecutorial misconduct,  ____________________ 1 The government explains that it had just received a facsimile transmission from the St. Maartens' police force, reporting this information, that very morning. -6- and prejudiced her ability to obtain a fair trial. Because no objections to the cross-examination or the use of the impeachment document were made during trial, however, our standard of review is for "plain error." United States v. Montas, 41 F.3d 775, 779 _____________ ______ (1st Cir. 1994); United States v. Rosales, 19 F.3d 763, 765 (1st _____________ _______ Cir. 1994); see Fed. R. Crim. P. 52(b). Under this standard, we ___ will reverse only if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings, Rosales, 19 F.3d at 765, or where a miscarriage of justice has _______ occurred. United States v. Olivio-Infante, 938 F.2d 1406, 1411 _____________ ______________ (1st Cir. 1991). We find it difficult to discern any error here, much less that rising to the level of "plain error." Hopkins, somewhat cryptically, claims that the government unfairly withheld information from the defense in violation of the discovery rule, Fed. R. Crim. P. 16(a)(1)(A), which requires the government to provide the defense with "the substance of any oral statment which the government intends to offer in evidence at the ____________________________ trial . . . . " (emphasis added). The problem with this argument, however, is that the government did not offer the document or its contents into evidence; indeed, its use of the document was spurred solely by Hopkins' testimony on the stand, the substance of which the government could not have anticipated in exact detail. We have held that although Rule 16 encompasses statements that the government believes it will likely introduce in rebuttal as well as in its case-in-chief, the rule does not -7- and cannot encompass statements that the government, at the outset, does not know about, has no reason to find out about or take note of, and would be unlikely to introduce at trial. United States v. Ferrer-Cruz, 899 F.2d 135, 140 (1st Cir. 1990). ______________ ___________ Similarly, the government cannot be required to anticipate every possible defense, assume what the defendant's trial testimony may be, and then furnish the defense with otherwise irrelevant material that might be used for impeachment. Id. (quoting United __ ______ States v. Gleason, 616 F.2d 2, 25 (2d Cir. 1979), cert. denied, ______ _______ _____ ______ 444 U.S. 1082 (1980), and cert. denied sub nom. Carter v. United _________ _______________ ______ ______ States, 445 U.S. 931 (1980)). Because the government only ______ received the information that morning,2 provided counsel with a copy of the document at trial, and did not introduce the document into evidence but only used it to impeach Hopkins, we find that the government did not violate Rule 16's discovery requirements. Finally, we do not agree with Hopkins' contentions that the use of the document to impeach her was unfairly prejudicial. We do not see how the use of the document could have inflamed or misled the jury. In fact, if the document had been introduced  ____________________ 2 Of course, Rule 16 imposes a continuing duty on the government to disclose discoverable evidence that comes to light throughout the course of the proceedings. Ferrer-Cruz, 899 F.2d at 140. In this case, the government did provide defense counsel with the document at the trial that day, after receiving the document in the morning. The defense certainly received the document with ample time to analyze it. Its failure to address or respond to the government's use of the document in its own case seems to be a tactical decision, rather than a result of unfair surprise. Indeed, defense counsel never requested a continuance or filed an objection to the document, which it would have been entitled to do. -8- into evidence, it may have actually aided Hopkins' defense, as it would have provided the jury with an alternative theory about who may have purchased the stereo. In any event, the document was only used to impeach Hopkins' testimony and was not offered as evidence. We simply do not see any error here.3 CONCLUSION CONCLUSION For the foregoing reasons, Hopkins' conviction is affirmed. ________  ____________________ 3 As the government points out in its brief, even if the government's use of the document were error, it could only be termed harmless error in light of the abundance of evidence of Hopkins' culpability, and certainly would not rise to the level of error required for reversal. -9-