UNITED STATES, Appellee,

v.

Americo OLIVO–INFANTE,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Jose GONZALEZ, Defendant, Appellant.

Nos. 90–1196, 90–1197.

United States Court of Appeals,
First Circuit.

Heard March 7, 1991.

Decided June 7, 1991.

Lawrence Rizman, Boston, Mass., for defendant, appellant Olivo–Infante.

Arthur R. Silen, with whom Serra, Jordan and Carbone, were on brief, Boston, Mass., for defendant, appellant Gonzalez.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., was on brief, Providence, R.I., for appellee.

Before CAMPBELL and CYR, Circuit Judges, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

Following a joint jury trial, defendants-appellants Jose Gonzalez and Americo Olivo–Infante were convicted of conspiracy to distribute or possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Count I), and distribution or possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count II). Olivo–Infante was also convicted of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count III). A third defendant, Milton Castillo, was also convicted on the above counts and pled guilty to a fourth one, transfer of a firearm with knowledge that the firearm would be used to commit a drug trafficking crime. Castillo is not involved in this appeal. Olivo–Infante was sentenced to 85 months imprisonment on each of the three counts, to be served concurrently, and a period of supervised release. He was ordered deported after completion of the sentence. Gonzalez was sentenced to 70 months on each count, to be served concurrently, and a period of supervised release.

Olivo–Infante claims that the district court erroneously: (1) denied his motion for directed verdict of acquittal on Count III for distributing cocaine on June 6, 1989; (2) failed to sever his trial from that of his co-defendants; and (3) admitted hearsay ev-

idence under the co-conspirator exception to the hearsay rule articulated in *United States v. Petrozziello,* 548 F.2d 20 (1st Cir.1977). Gonzalez claims that the district court erroneously: (1) denied his motion for a directed verdict of acquittal on both counts; (2) failed to exclude inadmissible, prejudicial testimony; and (3) failed to provide the jury with cautionary instructions regarding certain evidence. We affirm the convictions.

## Background

Because both defendants challenge the denial of their motions for directed verdicts of acquittal, we review the evidence and all legitimate inferences which may be drawn therefrom in the light most favorable to the government. *United States v. Smith,* 680 F.2d 255, 259 (1st Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983).

Gonzalez, Olivo–Infante, and Castillo were arrested during a joint undercover operation conducted by agents of the Bureau of Alcohol, Tobacco, and Firearms (ATF) and the Drug Enforcement Administration (DEA). In early 1989, Agent Matthew W. Horace of ATF, acting undercover, contacted Castillo several times to negotiate the purchase of drugs and firearms. The two met on June 6, 1989, at Elmwood and Cadillac Streets in Providence, Rhode Island. Castillo, driving a silver Mercury, signalled Agent Horace to follow him by car; they drove two blocks to Melrose Avenue and parked in front of an electric company. There, Agent Horace agreed to pay Castillo $1,455 for three ounces of "crack" cocaine and a firearm. Half an hour later, Castillo returned in a different car driven by Olivo–Infante. Again, Castillo motioned Horace to follow. Four blocks later, Horace got out of his car, briefly spoke to Castillo at the passenger side of Castillo's vehicle, paid him $1,455, and received in exchange a tissue box containing cocaine and a gun. Olivo–Infante sat in the driver's seat while Castillo and Agent Horace consummated the transaction.

On June 15, Agent Horace called Castillo to complain that he had been sold cocaine rather than crack. Castillo promised to supply crack at a later date; and after several discussions, they agreed to meet again. On June 20, 1989, Castillo met Agent Horace at Elmwood and Cadillac Streets, and they drove separately to 37 Stanwood Street in Providence. After they parked, Castillo told Agent Horace to relax because they were at the house of his friends. Initially, Agent Horace noticed Olivo–Infante in front of the residence. Thirty minutes later, Agent Horace observed Gonzalez five or ten feet away from him, speaking in Spanish to Castillo and Olivo–Infante. Agent Horace had never seen Gonzalez prior to that time. Although Agent Horace could not understand Spanish, he thought he overheard Gonzalez say the word "kilo" to Castillo and Olivo–Infante. After forty minutes, Agent Horace told Castillo he could wait no longer. Castillo replied that the half kilo of crack he had requested was on hand but that an additional four ounces had not yet arrived. Agent Horace agreed to buy the half kilo, whereupon Castillo advised him to go with Olivo–Infante to a blue Chevrolet Nova parked nearby to see the cocaine. The Nova was registered under Rhode Island plate number JU 436 to Jose Gonzalez.

Agent Horace entered the Nova from the passenger's side; Olivo–Infante got in from the driver's side. Olivo–Infante pulled from under his seat a package containing a white powdery substance later determined to be cocaine. Castillo and Gonzalez stood at the right rear corner of the car speaking to one another while Olivo–Infante showed Agent Horace the cocaine. After examining the cocaine, Agent Horace exited the car and told Castillo he would get his money. As Agent Horace walked back to his own automobile, government agents moved in to make the arrests. Olivo–Infante ran in the direction of Agent Horace, who apprehended and arrested him. When Agent Horace returned to the blue Nova, he seized the cocaine, which had been moved from the front seat to the rear floorboard. Gonzalez was arrested inside the Nova.

Olivo–Infante

■ Olivo–Infante claims that the district court erroneously denied his motion for directed verdict of acquittal on Count III of the indictment, distributing cocaine on June 6, 1989. Viewing the evidence in the light most favorable to the government, our inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Barnes*, 890 F.2d 545, 549 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990).

According to Olivo–Infante, on June 6, 1989, he had merely given Castillo a ride and did not participate in the drug sale. He cites *United States v. Bethea*, 442 F.2d 790, 793 (D.C.Cir.1971), for the proposition that "[m]erely showing that appellant was a passenger in the car and in proximity to the heroin is, without more, insufficient to support a finding of possession."

The evidence shows that Olivo–Infante was more than merely present. On June 6, Agent Horace met with Castillo to settle the price of the gun and the drugs. Half an hour later, Castillo reappeared with the merchandise, this time in a car driven by Olivo–Infante. While Olivo–Infante sat in the driver's seat, Agent Horace and Castillo spoke and made the exchange. Olivo–Infante claims that there was no evidence that he could see what was in the box or that he was in a position to know what was happening as Agent Horace handed Castillo money and Castillo handed Agent Horace the box. That Olivo–Infante's fingerprints were not found on the box does not absolve him. It is commonly accepted that "[d]rivers generally have dominion and control over the vehicles that they drive"; from this a jury may infer knowing possession of drugs found within such a vehicle. *United States v. Lochan*, 674 F.2d 960, 966 (1st Cir.1982). Furthermore, the jury could reasonably have inferred that under these potentially dangerous circumstances, an insider rather than an outsider would chauffeur the dealer. We recently noted that "it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes." *United States v. Batista–Polanco*, 927 F.2d 14, 18 (1st Cir.1991). The jury could reasonably have found that on June 6, 1989, Olivo–Infante was more than "merely present," and was part of Castillo's drug operations. Viewing the evidence in the light most favorable to the government, we affirm the district court's denial of Olivo–Infante's motion for directed verdict.

■ Olivo–Infante next challenges the district court's refusal to sever his trial from Castillo's. A district court's denial of a motion to sever "is addressed to the discretion of the trial court and should not be reversed without a strong showing of prejudice." *United States v. Drougas*, 748 F.2d 8, 18 (1st Cir.1984). We will reverse only if that discretion is abused, denying the defendant a fair trial and resulting in a miscarriage of justice. *United States v. Arruda*, 715 F.2d 671, 679 (1st Cir.1983).

In a multi-defendant case, the trial court must ensure that the evidence against one defendant "is not misinterpreted by the jury and used as the basis for convicting another defendant not connected to that evidence." *United States v. Drougas*, 748 F.2d at 18 (citing *United States v. Flaherty*, 668 F.2d 566, 582 (1st Cir.1981)). Castillo testified that Olivo–Infante told him a party named Williams had delivered cocaine and that Olivo–Infante carried the package from one location to another. This testimony, Olivo–Infante contends, implicated him in Castillo's activities, preventing him from receiving a fair trial. We note, however, that Castillo's testimony tended to exculpate as much as to inculpate Olivo–Infante. Castillo emphasized at trial that he alone organized the cocaine delivery and sale and that Olivo–Infante was ignorant of the arrangements. Castillo testified that Olivo–Infante was unaware of the contents of the package from Williams and that Olivo–Infante was not paid for handling the package.

In *United States v. Martinez*, 922 F.2d 914 (1st Cir.1991), the prosecution attempted to elicit incriminating evidence from a co-defendant, but the responses "were pre-

dominantly evasive and the answers that did come out tended to exculpate" the co-defendant. *Id.* at 922. We therefore found that the denial of the defendant's motion to sever was not prejudicial. A similar situation exists in the present case; any prejudice resulting from Castillo's testimony, which tended primarily to exculpate Olivo–Infante, was "purely incidental and of no legal consequence." *Id.* at 922.

Finally, Olivo–Infante claims that the district court, under the rule set forth in *United States v. Petrozziello*, 548 F.2d 20, erroneously allowed into evidence hearsay statements regarding the events leading up to the June 6 and June 20 sales. He focuses on Agent Horace's testimony of conversations he had with Castillo:

> On June 5, I had a conversation with Mr. Castillo in reference to the negotiation for the purchase of three ounces of cocaine as well as the firearm.
>
> .     .     .     .     .
>
> At that time [June 6th], I was just affirming that we would meet on that date for the purchase of the cocaine and the firearm. Mr. Castillo instructed me to come to Providence on 95 southbound, exit at the Elmwood Avenue Exit, and to telephone him again on his beeper on a phone booth at Elmwood and Cadillac Streets in Providence.

Under *Petrozziello*, a co-conspirator's statement may be admitted at trial if the district court finds, at the close of all of the evidence, that the government has shown by a preponderance of the evidence that the conspiracy existed, that both the declarant and the defendant were members of the conspiracy, and that the statement was made in the course of and in furtherance of the conspiracy. *Id.* at 23.

In *United States v. Machor*, 879 F.2d 945 (1st Cir.1989), *cert. denied*, ── U.S. ──, ──, 110 S.Ct. 1138, 1167, 107 L.Ed.2d 1043, 1070 (1990), we held,

> [W]here a proper hearsay objection was made and a *Petrozziello* determination was neither requested by the parties nor made by the trial court, there will be no reversible error if an examination of the record reveals that the trial court acknowledged that a Fed.R.Evid. 801(d)(2)(E) problem existed and considered the issue, provided, of course, that the government has met its burden of proof under *Petrozziello*.

*Id.* at 950–51 (citations omitted). The record shows that counsel for defendant objected to admission of the statements at issue, that the court considered the matter, and that counsel for defendant failed to request *Petrozziello* findings at the close of all the evidence. The record also establishes that the government showed by a preponderance of the evidence that a conspiracy existed, that Castillo and Olivo–Infante were members of the conspiracy, and that the statements in question were made in furtherance of that conspiracy. Olivo–Infante drove Castillo to the June 6 drug sale. On June 20, Olivo–Infante was present at 37 Stanwood Street during the entire time Agent Horace was there waiting to buy cocaine. He spoke with Castillo during this time and led Agent Horace to Gonzalez's car to show him the cocaine. "The gist of a conspiracy offense is the agreement." *United States v. Juodakis*, 834 F.2d 1099, 1104 (1st Cir.1987) (per curiam). The evidence of cooperation between Castillo and Olivo–Infante was sufficient to establish by a preponderance of the evidence that a conspiracy existed and that the statements in question were made in furtherance of the conspiracy. No reversible error was made by the district court.

### Gonzalez

Gonzalez claims that the district court erroneously denied his motion for acquittal on both counts against him: conspiracy to possess with intent to distribute cocaine and possession.

To prove its case, "the government was required to demonstrate only a tacit understanding" between Gonzalez and the other conspirators. *United States v. Arboleda*, 929 F.2d 858, 870 (1st Cir.1991). A conspiracy may be proved by direct or circumstantial evidence, *United States v. Valencia–Lucena*, 925 F.2d 506, 512 (1st Cir. 1991), and may be inferred from a develop-

ment and collocation of circumstances. *United States v. Rivera–Santiago*, 872 F.2d 1073, 1079 (1st Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 and — U.S. ——, 110 S.Ct. 105, 107 L.Ed.2d 68 (1989) (citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)).

■ The question is whether a jury could reasonably find that Gonzalez's role in the events of June 20 amounted to more than "mere presence." In *United States v. Batista–Polanco,* 927 F.2d at 18, we held that a jury could infer criminal participation by a defendant who witnessed a heroin packaging operation, apparently from the vantage point of one of the six seats at the work table. In the present case, the cocaine was in Gonzalez's car prior to the sale. Constructive possession may be proven if the government can show that the defendant had "dominion and control over the area where the contraband was found." *United States v. Barnes,* 890 F.2d at 549; *see also United States v. Lochan,* 674 F.2d at 966 (the government established knowing possession of hashish where defendant was driving an automobile, not his own, containing over three pounds of the drug). A jury reasonably could infer that Gonzalez had constructive possession of the cocaine and that this indicated agreement by him to participate in the sale. Furthermore, Gonzalez was present at 37 Stanwood Street talking to Castillo and Olivo–Infante just minutes before and during the time Olivo–Infante showed Agent Horace the cocaine in the front seat of his Nova. When Olivo–Infante showed Agent Horace the cocaine in the front seat of Gonzalez's car, Gonzalez was standing next to his car talking to Castillo. After Agent Horace exited the Nova, presumably to get cash for the deal, Gonzalez got into the car and was ultimately arrested trying to get out of it. The cocaine had been transferred from the front seat to the rear floor of the car. The jury could have found that these facts proved beyond a reasonable doubt that Gonzalez had joined the conspiracy.

■ The facts recited above apply also to Gonzalez's conviction for possession

with intent to distribute. Because the cocaine was in his car as the deal unfolded, the jury could have found Gonzalez in constructive possession of it. Because Gonzalez was standing next to his car while Olivo–Infante showed the cocaine to Agent Horace, the jury could have inferred that Gonzalez had the intent to distribute. The district court did not err in denying his motion for acquittal on this count.

■ Gonzalez also claims that the government's case rested entirely on inadmissible hearsay evidence. Agent Horace testified that he heard Gonzalez say the word "kilo" to Castillo while he waited to buy cocaine. On cross examination, he admitted that he did not understand Spanish but thought he heard the word "kilo." Gonzalez failed to object at trial to Agent Horace's testimony. The standard of review is plain error, and we will reverse only if a miscarriage of justice has occurred. *United States v. Morales–Diaz,* 925 F.2d 535, 539 (1st Cir.1991).

The jury heard the tape recording in which Gonzalez allegedly said "kilo" and was instructed to consider the tape in light of the government's failure to translate it. We listened to the tape as the jury did, without the benefit of a translator. Someone on the tape said a word that sounded somewhat like "kilo," but we think that the word could also have been something else in Spanish.

Although Agent Horace was not qualified to translate Spanish, Gonzalez had the opportunity to cross-examine him about what he thought he had heard. Any error that might have occurred in allowing Agent Horace to state that he had heard Gonzalez use the word "kilo" was not plain error; it was harmless. The other evidence against Gonzalez, already outlined, was more than sufficient to support his conviction.

■ Gonzalez further claims that the district court erroneously admitted testimony regarding Castillo's firearm sale to Agent Horace because the firearm count against Castillo had been severed and Gonzalez was not involved in that crime. The jury heard testimony regarding the June 6

firearm sale because the sale was simultaneous to the June 6 cocaine sale. Gonzalez did not object during trial to references to the gun sale. Without a contemporaneous objection, we review the admission of the evidence only for plain error. *United States v. Griffin*, 818 F.2d 97, 100 (1st Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). Under this standard we review only "blockbusters: those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below." *Id.* at 100. We recognize that "[w]here it is shown to be prejudicial, the 'spillover' of evidence is prohibited," *United States v. George*, 752 F.2d 749, 754 (1st Cir.1985). We do not think the evidence of the gun sale had a prejudicial "spillover" effect, nor that the references to the firearm had any effect on the trial's outcome. *See United States v. Griffin*, 818 F.2d at 100; *United States v. Fuller*, 768 F.2d 343, 347 (1st Cir.1985).

■ Finally, Gonzalez claims that it was plain error for the trial judge to instruct the jury to draw whatever inference it wished from the absence of a translation of the Spanish language on the tapes. When the jury asked for a translation of the Spanish conversation at issue, the trial judge responded, "[Y]ou as a jury are entitled to draw such reasonable inferences as you feel are justified in light of the fact that there is no Spanish translation of that language submitted by the Government in this case." Defendant failed to object to the instruction at trial, probably because it did not seem prejudicial.

Because of the failure to object, the plain error standard again governs our review.

In applying plain error jurisprudence to the judge's charge, 'the question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'

*United States v. Boylan*, 898 F.2d 230, 249 (1990) (citations omitted). "[T]he alleged error warrants reversal only if, when considered in the context of the entire trial, it could be said to 'undermine the fundamental fairness of the trial and contribute to a miscarriage of justice.'" *United States v. de Leon Davis*, 914 F.2d 340, 344 (1st Cir. 1990) (quoting *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)). As we said above, Gonzalez's conviction did not depend on the tape-recorded evidence; the judge's instructions therefore did not "infect the entire trial." And the prejudice, if any, was so slight as to be *de minimis*.

The convictions are affirmed.