USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1209 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. FIDEL R. TUTIVEN, Defendant, Appellant.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, Senior U.S. District Judge] __________________________  ____________________ Torruella, Selya and Cyr, Circuit Judges. ______________  ____________________ Peter B. Krupp for appellant. ______________ Timothy Q. Feeley, Assistant United States Attorney, with whom __________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________  ____________________ November 14, 1994  ____________________ CYR, Circuit Judge. Defendant Fidel R. Tutiven alleges CYR, Circuit Judge. _____________ error in various trial court rulings, and appeals from the district court judgment entered following his conviction and sentence on fourteen felony charges. As our review discloses no error, we affirm the district court judgment. I I BACKGROUND1 BACKGROUND __________ During the relevant eleven-month period between April 1992 and February 1993 while employed as a waiter at a Marriott Hotel, Tutiven conducted a part-time criminal enterprise selling stolen motor vehicles to a Massachusetts automobile dealership at bargain prices ranging from $7,900 for a 1991 Toyota Corolla to $21,500 for a 1991 Mercedes Benz. Tutiven represented to the buyer, Clair Motors, that the first car, a 1991 Nissan 240 SX, belonged to a cousin, and that subsequent vehicles had been obtained from unidentified dealers in the New York-New Jersey area who specialized in late-model cars purchased from financially distressed owners who responded to newspaper ads. Tutiven presented Clair Motors with what appeared to be valid title certificates correctly describing the vehicles and bearing the same vehicle identification numbers ("VINs") appear-  ____________________ 1The facts are recited in the light most favorable to the verdicts. United States v. Tejeda, 974 F.2d 210, 212 (1st Cir. _____________ ______ 1992). 2 ing on the vehicles Tutiven delivered to Clair Motors.2 It was stipulated that the fourteen vehicles identified in the indict- ment had been stolen before Tutiven came into possession. Tutiven's defense was that he had been duped by an expert VIN-switching scheme and did not know the vehicles had been stolen. At trial the defense emphasized that the apparent comportment among VINs, vehicles and title certificates had been adequate to allay any suspicions on the part of Clair Motors. Indeed, an automobile-theft expert testified that although the vehicles Tutiven sold to Clair Motors did not bear the VINs originally assigned by their manufacturers, it had taken a sophisticated heat and chemical restoration process to remove the false confidential VINs which had been superimposed on the originals. The disclosure of the original VINs enabled the authorities to determine that all fourteen vehicles had been stolen. Further investigation established that "switches" had been performed on all the vehicles, sometime before their sale to  ____________________ 2The VIN is a unique series of seventeen numbers and letters which the manufacturer must assign to each vehicle it assembles. The VIN provides an alphanumeric description of the particular vehicle to which it has been assigned. Normally it is affixed at three locations: on a narrow metal plate on top of the dash- board, near the base of the windshield (the public VIN); on the federal certification sticker or decal placed on the driver's side door-jamb (the federal certification VIN); and on a metal surface inside the vehicle, usually within the engine compartment (the confidential VIN). All vehicles bear the public VIN and the federal certification VIN; ninety-five percent bear a confiden- tial VIN. The confidential VIN, which is stamped into the metal of the vehicle, is the most difficult to locate and alter. No two vehicles bear the same valid VIN. 3 Clair Motors.3 Tutiven was arrested shortly after law enforcement authorities learned that all fourteen vehicles he sold to Clair Motors had been stolen. Within hours of the arrest, the police executed a search warrant at Tutiven's residence which disclosed a large cardboard box containing only implements and materials ____ suitable for obliterating, altering, and replacing VINs, together with a small collection of Massachusetts, New Jersey and New York license plates.4 A federal grand jury returned a twenty-seven-count  ____________________ 3Automobile dealerships routinely consult computer databases on stolen vehicles before purchasing a used vehicle. The predi- cate step in a "switch" scheme is to locate a "clean" vehicle, i.e., one which has not been reported stolen but is nearly ____ identical to the stolen vehicle in make, year, color, and style. The valid title certificate issued to the "clean" vehicle bears its true VIN. The VIN assigned to the "clean" vehicle is super- imposed on the true VIN in the stolen vehicle. The stolen vehicle is then given title documents matching its "clean" look- alike. An effective VIN-altering and title-switching scheme re- quires clean vehicles not in circulation. At least two types of clean vehicles meet this requirement: vehicles previously exported outside the United States and scrapped vehicles. When a stolen vehicle has been given the original VIN and valid papers describing an exported vehicle, the stolen car is said to be the subject of an "export switch;" a scrapped car results in a "salvage switch." The Tutiven vehicles involved export and salvage switches. 4The only tools and materials discovered at Tutiven's residence were a pop rivet gun, pop rivets, an electric drill, black mesh body fiber, a sponge smothie, two tubes of silicone, and a can of scratch filler primer. Although the defense empha- sized at trial that each tool had a licit purpose, there was no ____ evidence that the tools and materials collectively were suited to any particular purpose other than altering VINs. Each tool seized had a VIN-altering function; none was unsuited to VIN altering. Finally, their common location with the license plates provided further support for the inference that the tools and materials were for use on motor vehicles. 4 indictment on April 20, 1993, charging Tutiven with possessing or selling stolen motor vehicles which had crossed state lines, in violation of 18 U.S.C. 2313, and with possessing, for sale, motor vehicles whose original VINs had been altered, in violation of 18 U.S.C. 2321. The government later dismissed thirteen counts, leaving fourteen for trial: unlawful possession of thirteen separate stolen motor vehicles, in violation of 18 U.S.C. 2313, and Count XIV, unlawful possession of a fourteenth vehicle bearing an altered VIN, in violation of 18 U.S.C. 2321. The district court denied Tutiven's motion in limine to exclude the tools, materials and license plates. For the most part, the evidence presented at trial established that the VIN alterations on the Tutiven vehicles were detectable only by experts, through a process of grinding, applying chemicals, and heating the metal surfaces on which the VINs were stamped. A VIN expert and a Massachusetts state trooper testified that the VIN alterations on the two vehicles involved in Counts I and XII were discernible by the trained eye, without resort to special processes. The testimony further established that letters in the VIN on the vehicle involved in Count XIV described a vehicle model different from the stolen vehicle to which it was attached, a virtual impossibility were the VIN valid. The jury returned guilty verdicts on all fourteen counts and the district court subsequently sentenced Tutiven to twenty-seven months' imprisonment. Tutiven mounts three challenges on appeal. First, he 5 claims that the district court committed reversible error by admitting in evidence the seized tools, materials and license plates, which invited the jury to draw only impermissible infer- ences. See Fed. R. Evid. 404(b). Second, Tutiven contends that ___ the jury instruction relating to the element of "knowledge" was deficient because the court refused to define "negligence." Third, he argues that a sentencing enhancement under U.S.S.G. 2B1.1(b)(5)(B) (the so-called "in-the-business" enhancement) was improper, in that there was no evidence that Tutiven knowing- ________ ly received stolen property.  __ II II DISCUSSION DISCUSSION __________ A. The Tools, Materials and License Plates  A. The Tools, Materials and License Plates _______________________________________ Tutiven first claims that no relevant inference could be drawn from his possession of the tools, materials and license plates seized from his home except by indulging impermissible predicate inferences based on bad character and criminal propen- sity. See Fed. R. Evid. 404(b).5 Alternatively, he contends ___  ____________________ 5Fed. R. Evid. 404(b) provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, know- ledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of 6 that any relevance the seized evidence may have had was substan- tially outweighed by the danger of unfair prejudice. See id. ___ ___ 403.6 1. Fed. R. Evid. 404(b): "Other Acts" Evidence 1. Fed. R. Evid. 404(b): "Other Acts" Evidence ____________________________________________ The district court admitted the tools, materials and license plates for the exclusive purpose of evidencing Tutiven's knowledge that the fourteen vehicles had been stolen and that the VIN on the fourteenth vehicle had been altered. The court repeatedly cautioned the jury accordingly.7 Tutiven nonetheless  ____________________ trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it in- tends to introduce at trial. 6Fed. R. Evid. 403 provides: Although relevant, evidence may be excluded if its probative value is substantially out- weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. 7For example, the final jury charge included the following instruction: I just want to remind you that the defendant is charged with possessing a motor vehicle knowing that motor vehicle had been stolen. _______ And he was charged with possessing a motor vehicle that had been altered with intent to sell, an altered identification number [sic]. Knowing [sic] that that identification number _______ had been altered. He is not charged with altering. He is not charged with stealing the car. The tools and materials which have just been admitted, to 7 insists on appeal that Rule 404(b) absolutely barred the seized evidence because his possession of the tools, materials and license plates enabled no permissible inference relevant to his knowledge that the vehicles had been stolen or their VINs al- tered.8  ____________________ the extent that you give them any weight, are to be considered by you only on the issue of knowledge. They are admitted only on the government's theory that the possession by the defendant Mr. Tutiven of these tools and materials reflect in some way on whether Mr. __ ____ ___ __ _______ ___ Tutiven knew the motor vehicles charged in _______ ____ ___ _____ ________ _______ __ the first 13 counts in the indictment were ___ _____ __ ______ __ ___ __________ ____ stolen and whether Mr. Tutiven knew that the ______ ___ _______ ___ _______ ____ ____ ___ vehicle identification number on the 1991 _______ ______________ ______ __ ___ ____ Toyota Corolla charged in Count 14 had been ______ _______ _______ __ _____ __ ___ ____ altered. _______ So the tools are there to help you decide, if you give the tools any weight at all, whether or not Mr. Tutiven knew that the cars had ____ been stolen and knew that the identification ____ number in Count 14 had been altered. (empha- sis added). 8Tutiven further contends that any inference that he knew the vehicles were stolen must necessarily have been based on conjecture. On the contrary, a fair and reasonable inference that Tutiven knew the vehicles were stolen would proceed directly from the foundation inference discussed in the text below. See __________ ____ ___ infra p. 11. _____ Nor was there any need for the jury to contravene its instructions, or infringe the stipulation between the parties, by indulging a predicate inference that Tutiven either stole the vehicles or altered their VINs. It was sufficient that Tutiven's possession of VIN-altering tools and materials, in combination with abundant other circumstantial evidence, see note 11 infra, ___ _____ fairly permitted the synergistic inference that Tutiven knew the illicit purpose to which the tools and materials were suited. Thus, it was the close circumstantial link between Tutiven's possession of the seized VIN-altering equipment and the numerous ___ VIN-altered vehicles he sold during this time frame which enabled the jury rationally to accord the seized evidence probative value on the central issue of Tutiven's knowledge. 8 Evidence Rule 404(b) absolutely bars "other acts" evidence relevant only to prove criminal propensity or bad character. United States v. Tuesta-Toro, 29 F.3d 771, 775 (1st _____________ ___________ Cir. 1994). Its absolute bar is implicated, however, only if the ________ ___ challenged "other crimes, wrongs, or acts" are relevant exclu- ______ sively to instigate an inference that the defendant is more ______ likely to have acted in similar fashion by committing the offense for which he is on trial. See, e.g., United States v. Moccia, ___ ____ ______________ ______ 681 F.2d 61, 63 (1st Cir. 1982) (citing Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, 404-26 (1980); see _____________________ ___ also United States v. Ferrer-Cruz, 899 F.2d 135, 137 (1st Cir. ____ _____________ ___________ 1990). Plainly, by its very terms, see note 5 supra, Rule 404(b) ___ _____ interposes no absolute bar to circumstantial evidence intrinsic ________ ___ _________ to the crime for which the defendant is on trial, but only to evidence of "other crimes, wrongs, or acts" whose probative value _____ exclusively depends upon a forbidden inference of criminal ___________ propensity. We recently dealt with a prototypical Rule 404(b) challenge which illustrates the point. In United States v. Arias-Montoya, 967 F.2d 708 (1st ______________ _____________ Cir. 1992), we held that the defendant's prior conviction for cocaine possession was barred by Rule 404(b) since it was rele- ______ vant only to establish an evidentiary predicate for a forbidden ____ "criminal propensity" inference: that defendant must have known the trunk of the vehicle he was driving contained cocaine because he had possessed cocaine on a prior occasion altogether unrelated _____ to the conduct for which he was on trial. Id. at 709-714. By ___ 9 contrast, the probative value of the intrinsic evidence that Tutiven possessed VIN-altering tools and materials, at or about __ __ _____ the time and place these offenses allegedly took place, in no ___ ____ ___ _____ _____ ________ _________ ____ _____ respect depended upon an impermissible "criminal propensity" inference. Instead, Tutiven's possession of VIN-altering tools and materials, like an alleged burglar's contemporaneous posses- sion of burglary tools, see, e.g., State v. Romano, 456 A.2d 746, ___ ____ _____ ______ 760 (R.I. 1983) (upholding admission of burglary tools, seized from defendant's garage, as circumstantial evidence of defendant's role in alleged conspiracy to break and enter), constituted intrinsic circumstantial evidence directly probative _________ ________ of, inter alia, see infra note 12, Tutiven's knowledge that the _____ ____ ___ _____ vehicles he sold to Clair Motors had been stolen. The cases are legion in which similar intrinsic circumstantial evidence has been admitted without occasioning either challenge or analysis under Rule 404(b). See, e.g., United States v. Ford, 22 F.3d ___ ____ ______ ______ ____ 374, 381 (1st Cir. 1994) (upholding admission of evidence that defendant in drug case possessed instructional materials on methamphetamine manufacture); United States v. Nason, 9 F.3d 155, ______ ______ _____ 162 (1st Cir. 1993) (upholding admission of scales, bags, and baggies seized from motel room registered to defendant's girl- friend at time of defendant's arrest on the marijuana charges for which he was on trial); United States v. Cresta, 825 F.2d 538, ______ ______ ______ 554 (1st Cir. 1987) (upholding admission of weapons possessed by defendant during the drug smuggling crime for which he was on trial). 10 Tutiven relies on United States v. DeVillio, 983 F.2d ______ ______ ________ 1185 (2d Cir. 1993), as support for the claim that the VIN- altering tools and materials were barred by Rule 404(b). But the Devillio court merely ruled that the trial court erred in admit- ________ ting burglary tools as evidence of the modus operandi of the two _____ ________ appellants who were charged only with transporting stolen vehi- ____________ cles and stolen goods. Id. at 1188. The Second Circuit simply __ held that the burglary tools bore no special relevance to appel- lants' modus operandi in transporting stolen vehicles and goods. _____ ________ Id. at 1194. The court left no doubt, however, that the burglary ___ tools were highly probative evidence against appellants' co- defendants, who were on trial for burglary. See id.  ___ ___ The absolute bar to admission under Rule 404(b) was not implicated in the present case since it was unnecessary for the jury to resort to an impermissible propensity-based inference. Rather, the seized evidence would enable a rational jury relying on its common sense and collective experience9 to draw the relevant foundation inference that a defendant who __________ possessed VIN-altering tools and materials (and license plates), at or about the time he sold fourteen stolen vehicles bearing __ __ _____ ___ ____ __ ____ ________ ______ ________ _______  ____________________ 9See, e.g., United States v. Reyes-Mercado, 22 F.3d 363, 367 ___ ____ _____________ _____________ (1st Cir. 1994) ("[U]ltimately, whether or not the gun[ ] helped [defendant] commit the drug crime is a matter for a jury applying common-sense theories of human nature and causation") (citations omitted); United States v. O'Brien, 14 F.3d 703, 708 (1st Cir. _____________ _______ 1994) ("[I]n . . . choosing from among competing inferences, jurors are entitled to take full advantage of their collective experience and common sense"). (Citing United States v. Smith, _____________ _____ 680 F.2d 255, 260 (1st Cir. 1982), cert. denied, 459 U.S. 1110 _____ ______ (1983)). 11 altered VINs, was somewhat less likely to have been the innocent _______ ____ ________ victim of a VIN-altering scheme than would a seller of stolen ______ vehicles who did not possess such paraphernalia. 2. Fed. R. Evid. 403: Unfair Prejudice 2. Fed. R. Evid. 403: Unfair Prejudice ____________________________________ Although the seized evidence did not implicate the absolute bar imposed by Rule 404(b), we must consider Tutiven's companion claim that its admission in evidence on the issue of Tutiven's knowledge that the vehicles were stolen could not survive the relevancy-prejudice balancing required under Rule 403. Tuesta-Toro, 29 F.3d at 775. ___________ "[T]he threshold for relevance is very low under Federal Rule of Evidence 401. Evidence is relevant under Rule 401 if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" United ______ States v. Cotto-Aponte, 30 F.3d 4, 6 (1st Cir. 1994) (citing ______ ____________ United States v. Nason, 9 F.3d 155, 162 (1st Cir. 1993)), cert. _____________ _____ _____ denied, 114 S. Ct. 1331 (1994). These tools, materials and ______ license plates readily met the "any tendency" test under Rule 401. See supra p. 11; infra pp. 13-14; note 11 infra. ___ _____ _____ _____ We are reminded, nonetheless, that Rule 403 "excludes even evidence that is relevant through allowable chains of inference where the probative value of that evidence is 'sub- stantially outweighed,' [inter alia,] by the risks of [unfair] _____ ____ prejudice . . . ." Ferrer-Cruz, 899 F.2d at 138; see also United ___________ ___ ____ ______ States v. Nickens, 955 F.2d 112, 125 (1st Cir. 1992). However, ______ _______ 12 "[o]nly rarely and in extraordinarily compelling circumstances will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." Freeman v. _______ Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988), quoted in _________________ ______ __ United States v. Desmarais, 938 F.2d 347, 351 (1st Cir. 1991). _____________ _________ A recent case illuminates the pertinent relationship between the Rule 404(b) analysis undertaken above, see supra pp. ___ _____ 7-11, and the relevancy-prejudice balancing required under Rule 403. In United States v. Hahn, 17 F.3d 502 (1st Cir. 1994), a _____________ ____ search of defendant's automobile abandoned during the course of the alleged drug conspiracy for which he was on trial netted a handgun, ammunition, and a round-trip airline ticket between destinations material to the scope of the conspiracy. As the seized evidence constituted classic circumstantial evidence intrinsic to the alleged offense for which the defendant was on _________ trial, it was challenged and evaluated only under Rules 401 and 403. Id. at 509-10. Evidence that the same defendant had been ___ found in possession of a licensed firearm on another occasion in the course of the alleged conspiracy was challenged as "other acts" evidence under Rule 404(b). Id. at 508-09. We held that ___ Rule 404(b) posed no absolute bar because (i) "possession of a licensed firearm is neither a bad act nor indicative of bad character" and (ii) the evidence was directly relevant, inter _____ alia, to the geographic scope of the alleged conspiracy and the ____ defendant's role in it. Id. at 509. In the ensuing Rule 403 ___ 13 balancing, we went on to make clear that any risk of "prejudice" from the evidence that Hahn possessed a licensed firearm "did not derive unfairly from the challenged evidence itself." Id. ________ ___ (emphasis added). And so it is with the evidence admitted in the present case, which permitted the jury rationally and fairly to infer __________ ______ that Tutiven's contemporaneous possession of tools and materials well-suited to VIN altering made it less likely that he had been duped by an expert VIN-altering scheme. See, e.g., State v. ___ ____ _____ Meeks, 65 N.W. 2d 76, 78-79, 82 (Iowa 1954) (upholding admission _____ of evidence of "various instruments used by a typical check artist," possessed by defendant at time of arrest, to rebut defense that he had not known that the forged check he allegedly uttered had been forged).10 The tools, materials and license plates seized from Tutiven's residence provided cogent evidence tending to preempt an essential premise implicit in Tutiven's defense: that the only way Tutiven could have known of the ____ ___ _______ _____ ____ _____ sophisticated VIN alterations on the stolen vehicles would have been by visual examination, but since he was not a VIN expert he could not have known the vehicles were stolen. The jury fairly could infer from the challenged evidence, however, that a person expert or not who possessed VIN-altering equipment during ______ __ ___ _________  ____________________ 10The Tutiven jury heard testimony that the collective tools and materials were almost uniquely suited to a use (VIN altering) intimately related to the "switching" scheme. Tutiven's resi- dence contained no other automobile-related tools or materials. __ _____ The only other items seized were license plates from jurisdic- tions where Tutiven's stolen cars originated. See also note 4 ___ ____ supra. _____ 14 the time frame in which he sold numerous stolen vehicles with altered VINs was somewhat more likely to have known the equipment _____ was amenable to use in altering VINs and therefore that the vehicles were stolen, there being no other apparent purpose for VIN alterations.11 An inference that Tutiven knew the tools and materials seized from his home were suited to VIN altering would tend rather strongly to dispel the no-knowledge premise in his de- fense. Moreover, in evincing Tutiven's knowledge that the vehicles were stolen, the challenged evidence entailed no signif- icant risk of unfair prejudice since simple possession of the ______ tools and materials was neither a bad act nor indicative of bad character. See Hahn, 17 F.3d at 509. Finally, the jury instruc- ___ ____ tions given by the district court, see, e.g., supra note 7, ___ ____ _____ provided further insulation against unfair propensity-based inferences by the jury. See Yates v. Evatt, 500 U.S. 391, 403-04 ___ _____ _____  ____________________ 11The seized evidence fit hand and glove with the cumulative array of circumstantial evidence underpinning the sturdy infer- ence that Tutiven knew the vehicles were stolen. The other circumstantial evidence included Tutiven's sale of fourteen stolen vehicles to Clair Motors within eleven months, all bearing altered VINs, for which Tutiven realized profits ranging from $6,500 to $1,600 per vehicle despite the fact that he was able to sell the vehicles to Clair Motors at bargain prices. See Common- ___ _______ wealth v. Boris, 58 N.E. 2d 8, 12 (Mass. 1944) (low price paid ______ _____ for foodstuffs admitted as evidence that defendant knew he was acquiring stolen goods). The evidence demonstrated that when Tutiven went to Clair Motors he was accompanied by individuals whom he falsely introduced as the owners of the vehicles. Finally, the evidence showed that the title certificates to most of the vehicles had been issued within a month prior to their sale to Clair Motors, that Tutiven conducted all his business in cash, and that he was able, in very short order, to produce vehicles of the type currently in greatest demand. 15 (1991) (reviewing court normally presumes jury followed instruc- tions); United States v. Daigle, 14 F.3d 684, 690 (1st Cir. 1994) _____________ ______ (holding that cautionary jury instruction minimized possible pre- judicial impact from documentary exhibit) (Rule 403).12 B. U.S.S.G. 2B1.1(b)(5)(B): The "In-the-Business" Enhance- B. U.S.S.G. 2B1.1(b)(5)(B): The "In-the-Business" Enhance- ____________________________________________________________ ment ment ____ As Tutiven failed to preserve the issue below, the sentencing enhancement under U.S.S.G. 2B1.1(b)(5)(B) is re- viewed for "plain error." Fed. R. Crim. P. 52(b).13 Thus, the defendant must show that the sentencing court committed "clear" or "obvious" error affecting a "substantial right." United ______ States v. Olano, 113 S. Ct. 1770, 1776-77 (1993); United States ______ _____ _____________ v. Colon-Pagan, 1 F. 3d 80, 81 (1st Cir. 1993). "[E]rror rises ___________ to this level only when it is so shocking that [it] seriously affect[ed] the fundamental fairness and basic integrity of the proceedings conducted below." United States v. Ortiz, 23 F.3d 21, _____________ _____ 26 (1st Cir. 1994) (citing United States v. Hodge-Balwing, 952 ______________ _____________  ____________________ 12The district court instructed the jury, consistent with the parties' stipulation, that the tools and materials were to be considered only in determining whether Tutiven knew the vehicles had been stolen and that the vehicle in Count XIV bore an altered VIN. Among other relevant inferences permissible under Rule 404(b) but for this stipulation, were "opportunity," "prepar- ___ ___ ation" and "plan." See Fed. R. Evid. 404(b). ___ 13Tutiven urges that we review the sentencing enhancement de __ novo because it touches upon "interpretive questions" under the ____ Sentencing Guidelines. The matter at issue required no guideline interpretation, however, only straightforward fact-finding by the sentencing court, which, even if preserved, we would review only for clear error. United States v. David, 940 F.2d 722, 739 (1st _____________ _____ Cir. 1991), cert. denied, 112 S.Ct. 2301 (1992).  ____ ______ 16 F.2d 607, 611 (1st Cir. 1991); United States v. Olivo-Infante, _____________ _____________ 938 F.2d 1406, 1412 (1st Cir. 1991) (internal quotation marks omitted)). We find no error. Tutiven complains that the sentencing court made no explicit finding that the offenses of conviction, viz., knowingly ___ possessing stolen motor vehicles (18 U.S.C. 2313) and knowingly possessing a motor vehicle with altered VINs (18 U.S.C. 2321), involved knowingly receiving stolen property and that the indict- _________ ment neither included such a charge nor would the trial record support it.14 The claim that the evidence before the sentenc- ing court would not support a finding that Tutiven knowingly received stolen property is groundless. As it was stipulated that Tutiven did not steal the _______ motor vehicles, yet the jury supportably found beyond a reason- able doubt that he knew the vehicles were stolen, logic pretty much compels the conclusion that Tutiven knowingly "received stolen property." We disposed of an analogous claim in United ______ States v. Carty, 993 F.2d 1005 (1st Cir. 1993) (prosecution for ______ _____ drug possession and distribution), by reiterating the conclusive observation made by the sentencing judge in that case: "[Y]ou have to buy it to sell it." Id. at 1011. The strikingly similar ___  ____________________ 14U.S.S.G. 2B1.1(b)(5)(B) provides: If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 4 levels. The scope and operation of the "in-the-business" enhancement is explained in considerable detail in United States v. St. Cyr, 977 _____________ _______ F.2d 698, 702-04 (1st Cir. 1992). 17 collocation of circumstances substantiating the jury verdicts against Tutiven, see note 11 supra, provided ample support for ___ _____ finding that he knew these vehicles were stolen, and thus that he was "in the business of receiving and selling stolen property" within the meaning of U.S.S.G. 2B1.1(b)(5)(B). C. Jury Instruction on Actual Knowledge C. Jury Instruction on Actual Knowledge ____________________________________ Tutiven concedes that the district court correctly instructed the jury that Counts I through XIII required proof beyond a reasonable doubt that Tutiven had "actual knowledge" that the thirteen vehicles were stolen and, further, that proof of mistake, accident or negligence was insufficient to convict. But he insists that the court erred in refusing to define "negli- gence" for the jury. We review the challenged jury instruction against the backdrop of the entire trial. See United States v. Serino, 835 ___ _____________ ______ F.2d 924, 930 (1st Cir. 1987) ("[We do] not judge a single instruction to the jury in isolation, but rather in the context of the overall charge."); see also United States v. Park, 421 ___ ____ _____________ ____ U.S. 658, 674 (1975). And, of course, "[i]t is well settled that the court 'need not give instructions in the precise form or language requested by the defendant.'" United States v. Noone, _____________ _____ 913 F.2d 20, 30 (1st Cir. 1990), cert. denied, 500 U.S. 906 ____ ______ (1991) (quoting United States v. Beltran, 761 F.2d 1, 11 (1st ______________ _______ Cir. 1985)). In its preliminary instructions outlining the essential elements of the crimes charged in the indictment, the district 18 court told the jury that it could convict only if it found "that at the time Fidel Tutiven possessed [the car] or sold it, he knew, he had knowledge, that the car that he possessed or was selling was stolen." Following closing arguments, the court reinforced its instruction on knowledge: To sustain its burden of proof for each of Counts 1 through 13, the government must prove beyond a reasonable doubt . . . . [that] this defendant kn[e]w that motor vehi- cle was stolen at the time he possessed it? So you should ask yourselves . . . . has the government proved beyond a reasonable doubt that this defendant knew that the car was stolen at the time he possessed it?15 15 Thus, viewed in the context of the entire charge and particularly the trial judge's repeated admonitions that evidence of negli- gence was insufficient to convict, there is no question that the jury instructions on the necessity for proof of actual knowledge were both clear and correct.  ____________________ 15In their closing arguments, counsel emphasized the "know- ledge" element. Government counsel stated: "I ask you to find that, in fact, Fidel Tutiven knew exactly what he was doing; that he knew he was the point person in a stolen car ring; that he knew he was selling stolen cars and he knew that the VINs had been altered." And defense counsel adeptly underlined the inadequacy of a "negligence" finding: As Judge Mazzone will instruct you on the law, it is not enough to say that Mr. Tutiven should have known the cars were stolen. It's not enough to say that he should have known that the identification numbers were altered. It's not enough for Mr. Feeley to prove to you that a reasonable person would have known that the cars were stolen or that a reasonable person would have known that the identification numbers were altered. The government has to prove to you that Mr. Tutiven actually knew. In fact -- and I suppose they have to prove that to you beyond a reasonable doubt. 19 Finding no error, we affirm the district court judg- ment. Affirmed.  Affirmed. ________ 20