**Miguel Moya DURAN, Petitioner,**

v.

**Peter PEPE, Respondent.**

**Civ. A. No. 94–11836–WGY.**

United States District Court,
D. Massachusetts.

Sept. 27, 1995.

See also, 34 Mass.App.Ct. 1119, 613 N.E.2d 142.

Miguel Moya Duran, Norfolk, MA, pro se.

Djuna E. Perkins, Office of the Attorney General, Criminal Bureau, Boston, MA, William J. Meade, Assistant Attorney General, Boston, MA, for Peter Pepe.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The petitioner, Miguel Moya Duran ("Duran"), is presently incarcerated in a Massachusetts prison after having been convicted in the Massachusetts Superior Court of trafficking in a controlled substance in violation of Mass.Gen.L. ch. 94C, § 32E. Duran seeks a writ of habeas corpus on the grounds that his conviction was based on constitutionally insufficient evidence and that he was denied an adequate opportunity to confront one of the witnesses against him at trial.

With proper deference to the fact-finding of the courts of the Commonwealth, the following facts may be gleaned from the record: Duran was arrested along with Borely Baez ("Baez") on November 5, 1987, as part of a typical "buy-bust" operation. Richard Roper ("Roper"), an undercover police officer, posed as the prospective drug buyer in the transaction. Roper had been told by an informant,

Carmen Rosado ("Rosado"), that Baez had drugs available for sale.

Roper was present in a parking lot in Lowell, Massachusetts, on November 5th, when Rosado, Baez, and Duran arrived in two separate vehicles—Rosado in her car, and Baez and Duran together in Duran's car, with Baez driving. After arriving, Baez and Roper engaged in preliminary discussions while Duran stayed in the car. After those discussions, Baez went back to the car and spoke with Duran in Spanish. The record does not reveal what was said. Duran, however, while still seated in the front passenger seat, then handed Baez a brown paper bag. That bag contained approximately 248 grams of cocaine. When Baez delivered the bag to Roper, Roper tested its contents and determined that it was cocaine. Duran and Baez were arrested shortly thereafter.

### I. *Procedural Background*

On April 25, 1990, Duran was found guilty of trafficking in cocaine in violation of Mass. Gen.L. ch. 94C, § 32E, and received a sentence of ten to twelve years in state prison. Duran filed a motion for a new trial on May 14, 1990, which was denied by the Superior Court on July 31, 1992. On May 7, 1993, the Massachusetts Appeals Court affirmed Duran's conviction, and on May 25, 1994, the Supreme Judicial Court denied Duran's application for leave to obtain further appellate review.

Duran then filed a petition for habeas corpus in state court on June 23, 1994, which was dismissed on July 28, 1994. Duran next sought relief in federal court and filed the current petition on September 6, 1994, amending his claim on November 28, 1994.

### II. *Discussion*

A. Constitutional Sufficiency of the Evidence

■ When considering a claim of insufficient evidence on habeas review, a federal court's role is to "determine whether the state court adjudication 'has resulted in a

satisfactory conclusion.' " *Wright v. West,* 505 U.S. 277, 287, 112 S.Ct. 2482, 2487–88, 120 L.Ed.2d 225 (1992) (quoting *Brown v. Allen,* 344 U.S. 443, 463, 73 S.Ct. 397, 410–11, 97 L.Ed. 469 [1953] ) (emphasis added). The sole question is whether, based on the evidence presented, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *see also Wright,* 505 U.S. at 284, 112 S.Ct. at 2485–86 (court must consider whether it would have been possible for a rational factfinder to have reached the same conclusion as the actual trier of fact); *Stewart v. Coalter,* 48 F.3d 610, 613 (1st Cir.1995) (same).[1]

■ In making this determination, this Court must review all aspects of the record in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *United States v. Olivo–Infante,* 938 F.2d 1406, 1409 (1st Cir.1991). This is true even if the evidence might support conflicting reasonable inferences. Under *Jackson,* "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." 443 U.S. at 326, 99 S.Ct. at 2793.

■ In this case, the Court must determine whether any rational trier of fact could find, based on the evidence presented at trial, that Duran knowingly or intentionally manufactured, dispensed, distributed, or possessed the illegal substance—cocaine—with the intent to manufacture, distribute, or dispense 200 grams or more of that substance. Mass. Gen.Laws Ann. ch. 94C, § 32E(b)(4) (West Supp.1995).

Duran's primary argument is that the evidence at trial was not sufficient to support a finding beyond a reasonable doubt that he

---

**1.** While the current vitality of the *Jackson* standard has been questioned by the First Circuit given the personnel changes on the Supreme Court, *see Stewart* 48 F.3d at 613–14, the Court of Appeals has eschewed anticipating the High Court and continues its adherence to *Jackson.* *See id.* at 614 (speculating that scope of habeas will be narrowed); *see also id.* at 618 n. 4 (Stahl, J., dissenting) (speculating that scope of habeas will be expanded).

knowingly or intentionally possessed cocaine. In essence, Duran claims that the evidence did not establish that he knew that the bag he handed to Baez contained cocaine. Although one may, if so inclined, infer that Duran did not know what was actually in the brown paper bag, the jury obviously rejected that inference and, given the evidence at trial, this Court is not free to disregard the actual factfinder's conclusion that Duran did have such knowledge. *See United States v. Echeverri,* 982 F.2d 675, 678 (1st Cir.1993).

▇▇▇ Duran argues that his presence in the Lowell parking lot on November 5, 1987, was the result of his being in the wrong place at the wrong time through no fault of his own. He contends that he only gave Baez, a mere acquaintance, a ride in his car. Although Duran is correct that his presence at the scene, with nothing more, is insufficient to establish guilt, a claim of "mere presence" is not a catch-all excuse to defeat an inference of guilt beyond a reasonable doubt. *See id.* (" 'mere presence' defense has become, at one and the same time, both the last haven of the innocent and the last refuge of the scoundrel"); *United States v. Barnes,* 890 F.2d 545, 549 (1st Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). In evaluating a "mere presence" defense, the factfinder must distinguish, based on the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability. *See United States v. Torres–Maldonado,* 14 F.3d 95, 100 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994) (defendant using the mere presence argument may be found guilty where the " 'mere' is lacking"); *Echeverri,* 982 F.2d at 678 ("The attendant circumstances tell the tale—and the culpability of a defendant's presence hinges upon whether the circumstances fairly imply participatory involvement.").

▇▇▇ This verdict may stand—even though the jury relied solely on circumstantial evidence—because that evidence, viewed as a whole, led to the reasonable inference of guilt beyond a reasonable doubt. *United*

*States v. Fields,* 871 F.2d 188, 199–200 (1st Cir.), *cert. denied,* 493 U.S. 955, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989) ("It is … beyond dispute that a jury may find guilt beyond a reasonable doubt from circumstantial evidence"); *United States v. Plummer,* 964 F.2d 1251, 1254 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 350, 121 L.Ed.2d 265 (1992) ("The evidence may be entirely circumstantial and the factfinder may choose among reasonable interpretations of it"); *United States v. Akinola,* 985 F.2d 1105, 1109 (1st Cir.1993) (government "may prove its entire case through the use of circumstantial evidence, so long as the totality of the evidence permits a conclusion of guilt beyond a reasonable doubt"). Accordingly, Duran's claim that the jury should have been instructed to find him not guilty so long as the evidence could support at least one reasonable inference that he was innocent is not supported by established law. In fact, the First Circuit has rejected the argument "unequivocally." *United States v. Hicks,* 848 F.2d 1, 4 (1st Cir.1988).

▇▇▇ Indeed, the presence of a large quantity of a controlled substance such as cocaine may reasonably lead to the inference that a person in Duran's position was its possessor. *United States v. Ortiz,* 23 F.3d 21, 25 (1st Cir.1994) (large quantity of an illicit drug may allow one to infer that the defendant had possession); *see also Echeverri,* 982 F.2d at 678 ("We have repeatedly held … that an intent to distribute drugs can legitimately be inferred from factors such as quantity and purity"). Moreover, the "Commonwealth may prove that the defendant had knowledge of the contraband by circumstantial evidence, if the evidence warrants a reasonable inference to that effect." *Commonwealth v. Garcia,* 409 Mass. 675, 686, 569 N.E.2d 385 (1991). Therefore, even if the presence of contraband in a vehicle owned by the defendant were not enough, standing alone, to establish the defendant's possession, it supports a finding of possession in light of the other evidence or circumstances. *See id.* at 686–88, 569 N.E.2d 385.[2]

---

2. Duran further argues that the fact that the undercover agent had never known about him before and never gave Roper any expectation

that he would be present at the November meeting shows that he was not a part of the actual drug transaction. The informant's lack of knowl-

In a case involving similar facts, *United States v. Olivo–Infante,* 938 F.2d 1406 (1st Cir.1991), the First Circuit rejected a defendant's claim that his mere presence in a car was insufficient to establish either his possession of an illegal substance or guilt beyond a reasonable doubt. In that case, the defendant was convicted of distributing and conspiring to distribute five hundred grams or more of cocaine. On appeal, the defendant contended that he merely had given the principal a ride in his car but did not participate in the ensuing drug transaction. The First Circuit acknowledged that in order for the defendant to be found guilty, the evidence must show more than mere presence at the scene of the crime. *Id.* at 1409. However, the court also concluded that the defendant in that case was not "merely present" but that the evidence indicated he was actually a participant in the offense. *Id.*

As in this case, one could not tell from the container used to store the illicit materials in *Olivo–Infante* what was actually inside the container. In fact, in that case the defendant may not have had any contact with the container because it did not have any of his fingerprints on it. Nevertheless, the First Circuit detailed two inferences which jurors might reasonably draw in that situation. First, jurors could conclude that drivers ordinarily have possession of their vehicles and therefore may be considered aware, and in possession, of the contents of that vehicle. Second, "the jury could reasonably have inferred that under these potentially dangerous circumstances, an insider rather than an outsider would chauffeur the dealer," because "it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes." *Id.* at 1407–09 (quoting *United States v. Batista–Polanco,* 927 F.2d 14, 18 [1st Cir.1991]).

 The same is true in this case. The car used to transport the drugs was owned by Duran. Moreover, Duran not only witnessed Baez' dealings with Roper but also had some involvement with Baez during the course of those dealings. Accordingly, it was permissible for the jury to find Duran guilty beyond a reasonable doubt. Duran was more than an innocent bystander here. He did not simply watch this transaction. He brought the primary contact, Baez, to the meeting in his car, he spoke to Baez after Baez had conducted some preliminary talks with Roper, and he then handed Baez a bag containing a substantial quantity of illegal drugs. Given this combination of circumstances, a rational jury could—as this one did—conclude that Duran knowingly possessed the cocaine and participated in the transaction.[3]

## B. Confrontation Clause

 Duran also contends that he was denied a constitutionally adequate opportunity to cross-examine Roper, one of the witnesses at trial, regarding Roger's alleged sexual relationship with the informant Rosado. Duran argues that it was essential that he be permitted to inquire about that relationship in order to demonstrate that Roper and the informant were colluding against him and that each had a strong incentive to lie about what actually occurred.

The Commonwealth argues that because Duran failed to object to the Superior Court's ruling limiting questions regarding Roper's relationship with Rosado, Duran is now precluded from raising such claims. The Commonwealth emphasizes that the Massachusetts Appeals Court specifically noted Duran's failure to object. *See Commonwealth v. Duran,* No. 91–P–363, at 4–7, 34 Mass.App.Ct. 1119, 613 N.E.2d 142 (May 7, 1993). Based on that reference, the Commonwealth claims that Duran's procedural default, see Mass.R.Crim.P. 22,[4] bars his ability to obtain habeas relief.

edge in no way precludes a jury from finding Duran an active participant in the transaction and not merely an innocent bystander.

**3.** A rational jury may find that a person possessed drugs even when that possession was not exclusive. *United States v. Munoz,* 36 F.3d 1229,

1235 n. 2 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1164, 130 L.Ed.2d 1120 (1995).

**4.** Rule 22 provides:
Exceptions to rulings or orders of the court are unnecessary and for all purposes for which an exception has heretofore been necessary, it is

This Court disagrees. "A claim is procedurally defaulted if the state courts unambiguously deny relief on it because the petitioner substantially failed to comply with a reasonable and evenhandedly applied state procedural rule governing how and when the claim should have been presented in the state courts." James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 23.1 n. 9 at 291 (Supp.1993). Here, however, the Massachusetts Appeals Court, the highest state court to reach a decision on the claim now asserted on habeas, did not unambiguously rely on Duran's alleged procedural default when it denied his state habeas claim for relief. Although it mentioned Duran's failure to object to certain of the Superior Court's rulings, the Appeals Court proceeded to address the merits of his claims. *See Duran,* No. 91–P–363, at 6. As the Appeals Court decided the case on the merits and did not rely on any procedural failing by the petitioner, there is no "adequate and independent" basis for denying relief and this Court must address the merits of Duran's claims. *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("a federal claimant's procedural default precludes federal habeas review, like direct review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default").

■ The Massachusetts Appeals Court concluded that the Justice of the Superior Court acted within his discretion in limiting Roper's testimony. This Court agrees. The alleged illicit romance was a peripheral matter at best. Duran has made no colorable showing of prejudice from Roper's alleged bias in favor of, and willingness to "cover for," Rosado.

■ Indeed, even if the Superior Court had committed error in this respect, that error is not sufficient to warrant habeas relief. In *Brecht v. Abrahamson,* —— U.S. ——, ——, ——, 113 S.Ct. 1710, 1717, 1722, 123 L.Ed.2d 353 (1993), the Supreme Court reformulated the harmless error analysis for cases in which the court finds a constitutional "trial error"—that is, errors that occur in the course of presenting the case to the factfinder.[5] The *Brecht* majority held that the standard set forth in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), would now be used in analyzing whether a "trial-type" error was "harmless." Therefore, in addressing Duran's claims regarding the scope of cross-examination, which involve such trial errors, this Court must determine "whether, in light of the record as a whole," the ruling of the Justice of the Superior Court "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* —— U.S. at ——, 113 S.Ct. at 1722.[6]

For the reasons already described, this Court rules that the decision limiting Duran's cross-examination of Roper did not have such an effect. Duran sought to undermine Roper's credibility by questioning Roper about an alleged relationship with the informant. But that relationship had little bearing on the facts most relevant to the determination of Duran's guilt—his driving Baez to the meeting in his car, his presence during the entire transaction, his discussion with Baez during the transaction, and his handling of the bag containing the cocaine. The alleged error did not interfere with the factfinder's ability to evaluate those facts or determine whether Duran was a participant in the transaction.

---

sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court, but if a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him. If a party objects to a ruling or order of the court, he may state the precise legal grounds of his objection, but he shall not argue or further discuss such grounds unless the court calls upon him for such argument or discussion.

5. Trial error must be distinguished from "structural" errors, such as a deprivation of the right

to counsel, which "infect the entire trial." *Brecht,* —— U.S. at ——, 113 S.Ct. at 1717. The latter type of error is not subject to the harmless error analysis of *Brecht* or *Kotteakos,* but instead requires reversal. *Id.*

6. The old standard, how defunct, was established in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), which held that in order for a conviction to stand, the alleged error must be "harmless beyond a reasonable doubt."

Therefore, under *Brecht,* that error is harmless.

### III. *Conclusion*

For all of the foregoing reasons, the habeas petition must be, and hereby is, DENIED.